UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE, M.D.,

     Plaintiff,

v.

THE BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN, MARIE
LOZON, M.D., and JUSTIN DIMICK,
M.D., Individually,

     Defendants.

Case No. 21-cv-13032
Hon. Gershwin Drain
Hon Mag. Judge Curtis Ivy, Jr

---

MIDWEST LEGAL PARTNERS, PLLC
By: Saif R. Kasmikha (P74320)
42705 Grand River Avenue, Suite 201
Novi, MI 48375
(248) 344-4570
Attorneys for Plaintiff
skasmikha@midwestlegalpartners.com

CUMMINGS, MCCLOREY, DAVIS &
ACHO, P.L.C.
Ronald G. Acho (P23913)
17436 College Parkway
Livonia, MI 48152
(734) 261-2400
Attorneys for Plaintiff
racho@cmda-law.com

HALL, RENDER, KILLIAN, HEATH &
LYMAN, PC
David A. French (P31944)
Jonathon A. Rabin (P57145)
Larry R. Jensen (P60317)
Attorneys for Defendants
101 W. Big Beaver Rd., Suite 745
Troy, MI 48084
dfrench@hallrender.com
jrabin@hallrender.com
ljensen@hallrender.com

---

## **DEFENDANT BOARD OF REGENTS OF UNIVERSITY OF MICHIGAN'S MOTION TO DISMISS**

Defendant BOARD OF REGENTS FOR THE UNIVERSITY OF MICHIGAN, by and through its attorneys, hereby move to dismiss Plaintiff's Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

> The undersigned certifies that there was a conference between David French and Saif Kasmikha on January 4, 2022 in which the movant explained the nature of the motion or request and its legal basis and requested but was denied concurrence in the relief sought.

For the reasons given in the attached Brief in support and its accompanying Exhibits, Defendant respectfully requests that this Honorable Court grant this Motion, dismiss Plaintiff's claims against it with prejudice, and award its costs and attorney's fees so wrongfully sustained.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ David A. French
David A. French (P31944)
Jonathon A. Rabin (P57145)
Larry R. Jensen  (P60137)
Attorney for Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
dfrench@hallrender.com

Dated: January 4, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE, M.D.,

     Plaintiff,

v.

THE BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN, MARIE
LOZON, M.D., and JUSTIN DIMICK,
M.D., Individually,

     Defendants.

Case No. 21-cv-13032
Hon. Gershwin Drain
Hon Mag. Judge Curtis Ivy, Jr

---

| | |
|---|---|
| MIDWEST LEGAL PARTNERS, PLLC<br>By: Saif R. Kasmikha (P74320)<br>42705 Grand River Avenue, Suite 201<br>Novi, MI 48375<br>(248) 344-4570<br>Attorneys for Plaintiff<br>skasmikha@midwestlegalpartners.com | HALL, RENDER, KILLIAN, HEATH &<br>LYMAN, PC<br>David A. French (P31944)<br>Jonathon A. Rabin (P57145)<br>Larry R. Jensen (P60317)<br>Attorneys for Defendants<br>101 W. Big Beaver Rd., Suite 745<br>Troy, MI 48084<br>dfrench@hallrender.com<br>jrabin@hallrender.com<br>ljensen@hallrender.com |
| CUMMINGS, MCCLOREY, DAVIS &<br>ACHO, P.L.C.<br>Ronald G. Acho (P23913)<br>17436 College Parkway<br>Livonia, MI 48152<br>(734) 261-2400<br>Attorneys for Plaintiff<br>racho@cmda-law.com | |

---

**BRIEF IN SUPPORT OF DEFENDANT BOARD OF REGENTS OF
UNIVERSITY OF MICHIGAN'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

CONCISE STATEMENT OF THE ISSUES PRESENTED................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF
    SOUGHT ................................................................................................. vi

INTRODUCTION .................................................................................................1

STATEMENT OF FACTS ....................................................................................1

DISCUSSION OF LAW .......................................................................................3

I.  THE COURT LACKS PERSONAL JURISDICTION BECAUSE PLAINTIFF
    CANNOT PROSECUTE THIS ACTION PSEUDONYMOUSLY AND
    PLAINTIFF DID NOT SEEK PERMISSION TO DO SO .............................3

II.  THE COURT SHOULD DISMISS PLAINTIFF'S ONLY FEDERAL CLAIM,
    FOR VIOLATION OF 42 U.S.C. §1983, BECAUSE THE BOARD OF
    REGENTS IS NOT A "PERSON" UNDER THE ACT AND THE
    ELEVENTH AMENDMENT BARS SUCH A CLAIM ...................................3

III.  THE COURT SHOULD ALSO DISMISS PLAINTIFF'S ONLY FEDERAL
    COUNT BECAUSE IT IS FAILS TO STATE A CLAIM ON OTHER
    GROUNDS .................................................................................................5

A.  The Court Should Dismiss Plaintiff's Section 1983 Claim .............................. 5

    1.  Plaintiff Does Not Plead a Protected Property Interest in His Clinical
        Privileges Under the Medical Staff Bylaws ...............................................5

    2.  Because Plaintiff's Due Process Claim Sounds in Contract, it Should Be
        Dismissed ..................................................................................................11

B.  The Court Also Should Dismiss Plaintiff's Section 1983 Claims Against
    the Board of Regents Based on the Alleged Harm to His Good Name,
    Reputation, and Pursuit of His Chosen Profession ......................................... 12

C.  The Court Should Dismiss Plaintiff's Section 1983 Claims Against the
    Board of Regents Based on the Alleged Reduction in His Salary ................. 14

IV.  THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER
    PLAINTIFF'S STATE LAW CLAIMS ........................................................15

V.  FURTHER, ALL STATE-LAW CLAIMS AGAINST THE BOARD ARE
    BARRED BY THE ELEVENTH AMENDMENT........................................16

VI.  THE STATE LAW CLAIMS MUST BE DISMISSED FOR THE
       ADDITIONAL REASON THAT THEY FAIL TO STATE CLAIMS ON
       WHICH RELIEF CAN BE GRANTED ..........................................................17

A.  Plaintiff's Count II (Breach of Contract) Fails to State a Claim ..................... 17

B.  Plaintiff's Tort Claims Count III (Breach of Fiduciary or Public Duties)
     and Count IV (Intentional Infliction of Emotional Distress) Are Barred
     By Michigan's Governmental Immunity Law ................................................ 18

VII.  THE COURT SHOULD DISMISS COUNT IV (BREACH OF FIDUCIARY
        AND PUBLIC DUTIES) BECAUSE IT FAILS TO STATE A CLAIM ......19

VIII.  THE COURT SHOULD DISMISS ALTERNATIVELY DISMISS
         PLAINTIFF'S COUNT IV (INTENTIONAL INFLICTION OF
         EMOTIONAL DISTRESS) BECAUSE IT FAILS TO STATE A CLAIM ..21

IX.  THE COURT SHOULD DISMISS ALSO DISMISS PLAINTIFF'S
       COUNT V (RETALIATION) ........................................................................ 23

X.  THE COURT SHOULD DISMISS PLAINTIFF'S COUNT VI (FOR
      INJUNCTIVE RELIEF) BECAUSE THERE IS NO UNDERLYING
      ACTIONABLE CLAIM ..................................................................................24

XI.  THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR FAILURE
       TO EXHAUST HIS REMEDIES ..................................................................24

CONCLUSION ......................................................................................................25

CERTIFICATE OF SERVICE ..............................................................................26

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1. Should the Court dismiss Plaintiff's anonymous Complaint for lack of jurisdiction?

   Defendant answers "yes."
   Plaintiff would answer "no."

2. Should the Court dismiss Plaintiff's claim against the Board of Regents under 42 U.S.C. §1983 because the Board of Regents is not a "person" under the statute and Eleventh Amendment immunity bars the claim?

   Defendant answers "yes."
   Plaintiff would answer "no."

3. Should the Court dismiss Plaintiff's claim against the Board of Regents under 42 U.S.C. §1983 because it otherwise fails to state a claim on which relief can be granted?

   Defendant answers "yes."
   Plaintiff would answer "no."

4. Should the Court dismiss Plaintiff's state law claims against the Board of Regents pursuant to Eleventh Amendment Immunity?

   Defendant answers "yes."
   Plaintiff would answer "no."

5. Should the Court dismiss Plaintiff's tort claims against the Board of Regents as barred by governmental immunity?

   Defendant answers "yes."
   Plaintiff would answer "no."

6. Should the Court dismiss Plaintiff's claim for breach of contract for failure to state a claim on which relief can be granted?

   Defendant answers "yes."
   Plaintiff would answer "no."

7. Should the Court dismiss Plaintiff's claim against the Board of Regents for breach of fiduciary and public duties for failure to state a claim on which relief can be granted?

   Defendant answers "yes."
   Plaintiff would answer "no."

8. Should the Court dismiss Plaintiff's claim for intentional infliction of emotional distress for failure to state a claim on which relief can be granted?

   Defendant answers "yes."
   Plaintiff would answer "no."

9. Should the Court dismiss Plaintiff's claim against the Board of Regents for injunctive relief because Plaintiff's underlying claims should be dismissed?

   Defendant answers "yes."
   Plaintiff would answer "no."

10. Should the Court dismiss Plaintiff's claim against the Board of Regents for failure to exhaust administrative remedies?

    Defendant answers "yes."
    Plaintiff would answer "no."

# CONTROLLING OR MOST APPROPRIATE
# AUTHORITY FOR RELIEF SOUGHT

## Cases

*Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).............. 4

*Ali v. Univ. of Michigan Health Sys.-Risk Mgmt.*, 523 F. App'x 319 (6th Cir. 2013) ................................................................................................. 17

*Ali v. Univ. of Michigan Health Sys.-Risk Mgmt.*, No. 11-13913, 2012 WL 3110716 (E.D. Mich. July 31, 2012) ................................................. 17

*Ali v. Univ. of Michigan Health Sys.-Risk Mgmt.*, No. 11-13913, 2012 WL 3112419, at *3 (E.D. Mich. May 4, 2012)........................................ 17

*Ash v. Bd. of Educ. of Woodhaven Sch. Dist.*, 699 F.2d 822 (6th Cir. 1983) ........ 15

*Benjamin v. Schuller*, 400 F. Supp. 2d 1055 (S.D. Ohio 2005)............................. 7

*Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438 (6th Cir. 2014)........ 7, 8, 9, 10

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ................................................ 6, 15

*Bower v. Vill. of Mount Sterling*, 44 F. App'x 670 (6th Cir. 2002) ...................... 14

*Brintley v. St. Mary Mercy Hosp.*, 904 F.Supp.2d 699 (E.D. Mich. 2012), aff'd, *Brintley v. St. Mary Mercy Hosp.,* 545 Fed. Appx. 484 (6th Cir. 2013) ................................................................................................. 8

*Camara v. Gonzales*, 166 Fed. Appx. 840, 2006 U.S.App. LEXIS 3827, at *9, 2006 WL 357883, at *3 (6th Cir. Feb. 16, 2006) ......................... 6

*Campbell v. University of Louisville*, 862 F. Supp. 2d 578 (W.D. Ky. 2012)......... 4

*Charest v. Citi Inv. Grp. Corp.,* No. 330775, 2017 WL 2212110, at *5 (Mich. Ct. App. May 18, 2017) ............................................................. 22

*Clark v. W. Shore Hosp.*, 16 F. App'x 421 (6th Cir. 2001) .................................... 7

Davis v. Michigan Med. Univ. Hosp., No. 18-CV-14055, 2019 WL 1746261, at *1 (E.D. Mich. Apr. 18, 2019)...................................... 17

*Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004) ....................................................... 3

*Ernst v. Rising*, 427 F.3d 351 (6th Cir.2005)...................................................... 16

*Estate of Byrnes by Seegert v. Promedica Health Systems, Inc*., 2019 WL 4230687, at *12 (Mich. App. 2019)...................................................... 9

*Estate of Ritter by Ritter v. University of Michigan*, 851 F.2d 846 (6th Cir.1988) ............................................................................................. 17

*Ewing v. Bd. of Regents of Univ. of Michigan*, 552 F. Supp. 881 (E.D. Mich. 1982) ......................................................................................... 17

*Ferrell v. Vic Tanny Int'l, Inc*., 137 Mich. App. 238, 357 N.W.2d 669 (1984) .... 22

*Ford Motor Co v Ghreiwati Auto*, 945 F. Supp. 2d 851 (E.D. Mich. 2013) ......... 20

*G.E.G. v. Shinseki*, No. 1:10-CV-1124, 2012 WL 381589 (W.D. Mich. Feb. 6, 2012) ........................................................................................... 3

*Harris v. Univ. of Michigan Bd. of Regents*, 219 Mich. App. 679, 558 N.W.2d 225 (1996) ............................................................................ 19

*Henry v. Dow Chem. Co.*, 473 Mich. 63 (2005)............................................ 24

*Holliday v. Hurley Medical Center*, 2006 WL 2742055 (Mich. App., No. 267614) (Sept. 26, 2006) ............................................................... 19

*Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, 2011 WL 1641898 at \*8 (E.D. Mich., May 2, 2011)........................................ 22

*In re Flint Water Cases*, No. 18-10726, 2020 WL 1503256, at \*14 (E.D. Mich. Mar. 27, 2020) ................................................................... 19

*In re Karmey Estate*, 468 Mich. 68; 658 N.W.2d 796 (2003) .............................. 20

*Kaminski v Coulter*, 865 F.3d 339 (6th Cir. 2017) ........................................ 11, 12

*Kaplan v. Univ. of Louisville*, No. 19-825, 2020 WL 4275042, at \*8 (W.D. Ky. July 24, 2020), aff'd, 10 F.4th 569 (6th Cir. 2021) ...................... 14

*Keeler v. Hurley Med. Ctr.*, No. 16-CV-11268, 2017 WL 8791912 (E.D. Mich. Nov. 27, 2017) .................................................................... 6, 7

*Lewis v. Jarvie*, 20 F. App'x 457 (6th Cir. 2001) .......................................... 24

*Mack v Detroit*, 467 Mich 186; 649 NW2d 47 (2002) ..................................... 18

*McKenna v. Bowling Green State Univ.*, 568 F. App'x. 450 (6th Cir. 2014) ........... 4

*McPike-McDyess v. Regents of the Univ. of Michigan*, No. 14-14658, 2015 WL 626769, at \*1 (E.D. Mich. Feb. 12, 2015).................................... 4

*Med. Corp., Inc. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002) ........................... 6

*Michigan Ass'n of Chiropractors v. Blue Cross Blue Shield of Michigan*, 300 Mich. App. 551, 834 N.W.2d 148 (2013)....................................... 25

*Min Li v. Qi Jiang*, 38 F. Supp. 3d 870 (N.D. Ohio 2014) .................................. 4

*O'Byrne v. Santa Monica-UCLA Med. Ctr.*, 94 Cal. App. 4th 797, 114 Cal. Rptr. 2d 575 (2001)...................................................................... 20

*Parate v. Isibor*, 868 F.2d 821 (6th Cir. 1989) .............................................. 14

*Paul v. Davis*, 424 U.S. 693 (1976) ............................................................ 13

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ...................................................................... 16

*Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 486 F. Supp. 3d 1173 (S.D. Ohio 2020) ................................................................................. 17

*Quinn v. Shirey*, 293 F.3d 315 (6th Cir. 2002) .............................................. 13

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) ........................................................................ 4

*Riley–Jackson v. Ocwen Loan Servicing*, 2013 WL 5676827, at \*5 (E.D.Mich. Oct.18, 2013) (Rosen, C.J.) ............................................. 24

*Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985)......... 21

*Ross v. Burns*, 612 F.2d 271 (6th Cir. 1980)................................................. 21

*Runions v. Auto-Owners Ins. Co.*, 197 Mich. App. 105, 495 N.W.2d 166 (1992) ................................................................................. 21

*Sawabini v. Desenberg*, 143 Mich. App. 373, 372 N.W.2d 559 (1985)............... 22

*Superior Communications v City of Riverview,* 881 F.3d 432 (6th Cir. 2018) ...... 12

*Swartz v. Scruton*, 964 F.2d 607 (7th Cir. 1992) .................................................. 15

*Terlecki v. Stewart*, 278 Mich.App. 644, 754 N.W.2d 899 (2008) ...................... 24

*Tomaszycki v. Avila*, No. 18-10135, 2018 WL 2009587, at *1 (E.D. Mich. Apr. 30, 2018) (Drain, J.)................................................................. 23

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ......................................................................... 16

*Van v. Anderson,* 199 F.Supp.2d 550 (N.D.Tex.2002)........................................... 9

*Weary v. Baylor Univ. Hosp.*, 360 S.W.2d 895 (Tex. Civ. App. 1962) ................ 9

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir.1997)......................................... 10, 24

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, S.Ct. 2304, 105 L.Ed.2d 45 (1989) ..................................................................................... 4

*Yerkovich v. AAA*, 461 Mich. 732, 610 N.W.2d 542 (Mich. 2000) ........................ 8

## Statutes

42 U.S.C. § 11133(a)(1).......................................................................................... 2

42 U.S.C. §§ 11131, et. seq..................................................................................... 2

42 U.S.C. §1983 .............................................................................................. passim

M.C.L. § 691.1407(1) .......................................................................................... 18

M.C.L. § 691.1407(4) .......................................................................................... 18

## Other Authorities

Bylaws, § 4.6.3.7; § 7.1.2., 4 ................................................................................. 9

## Rules

Federal Rule of Civil Procedure 12(b)(1) and (6).................................................. 1

**INTRODUCTION**

In this case, Plaintiff seeks monetary and injunctive relief from Defendants Board of Regents of the University of Michigan, Dr. Marie Lozon and Dr. Justin Dimick. He brought 6 counts against Defendants, including only one under federal law (violation of the Fourteenth Amendment to the U.S. Constitution under 42 U.S.C. §1983), various state law claims and a claim for injunctive relief. He filed the action under the pseudonym "John Doe" but without permission from the Court to do so.

The instant Motion seeks dismissal of Plaintiff's Complaint against the Board of Regents under Federal Rule of Civil Procedure 12(b)(1) and (6). As set forth below, Plaintiff has no basis for relief against the Board whatsoever.

**STATEMENT OF FACTS**

According to the Complaint, Plaintiff is a physician with the University of Michigan Health System ("UMH"). As the Complaint reflects, UMH is a hospital and health system operated by the University of Michigan.[1] (Complaint, §4). Under the Michigan Constitution, the Regents of the University of Michigan are a body corporate and are charged with the University's general supervision. Mich. Const., Article VIII § 5.

---

[1] Plaintiff cannot and does not allege that the University of Michigan Health System is a private corporation.

1

Plaintiff claims to be a member of the UMH medical staff. (Complaint, ¶103). The Complaint states that, after three recent "non-event matters," UMH suspended his clinical privileges indefinitely and reported him to the National Practitioner's Data Bank ("NPDB").[2] (Complaint, ¶¶39-40). He further states that an action to recommend the revocation of his clinical privileges was made and that his request for renewal of his clinical privileges was denied. *Id.* at ¶¶86, 91. He also complains that UMH has not yet conducted a fair hearing in accordance with its medical staff bylaws. *Id.* at ¶59). Plaintiff claims that these actions have caused harm to his reputation, mental well-being, his career and patients. (Complaint, *passim*).

The Complaint includes six counts for relief with only one being based in federal law. That claim, in Count I, seeks relief under 42 U.S.C. §1983 for alleged violation of his rights under the Fourteenth Amendment to the U.S. Constitution. The other claims include breach of contract, breach of fiduciary and public duties, intentional infliction of emotional distress, retaliation, and injunctive relief.

---

[2] The NPDB is an informational database about healthcare providers established under 42 U.S.C. §§ 11131, et. seq. According to the law, all health care entities must report to the NPDB "a professional review action that adversely affects the clinical privileges of a physician for a period longer than 30 days." *Id.* § 11133(a)(1).

## <u>DISCUSSION OF LAW</u>

**I. THE COURT LACKS PERSONAL JURISDICTION BECAUSE PLAINTIFF CANNOT PROSECUTE THIS ACTION PSEUDONYMOUSLY AND PLAINTIFF DID NOT SEEK PERMISSION TO DO SO**

As set forth in Defendants Lozon and Dimick's separately-filed Motion to Dismiss, this Court lacks jurisdiction to proceed with this case and it should be dismissed because Plaintiff cannot proceed under a pseudonym and he did not seek permission from this Court to do so. *G.E.G. v. Shinseki*, No. 1:10-CV-1124, 2012 WL 381589 (W.D. Mich. Feb. 6, 2012); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). For that reason alone, the Court should dismiss Plaintiff's Complaint.

**II. THE COURT SHOULD DISMISS PLAINTIFF'S ONLY FEDERAL CLAIM, FOR VIOLATION OF 42 U.S.C. §1983, BECAUSE THE BOARD OF REGENTS IS NOT A "PERSON" UNDER THE ACT AND THE ELEVENTH AMENDMENT BARS SUCH A CLAIM**

As noted, Plaintiff's only federal claim seeks relief under 42 U.S.C. §1983 for alleged violations of the Fourteenth Amendment.[3] In the heading of Count I, Plaintiff suggests that Defendants violated his procedural (rather than substantive) due process rights. But, the simple fact is that any allegations regarding deprivation of

---

[3] Section 1983 provides: "Every person who, under color of [state law] subjects, [a] person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

due process are insufficient inasmuch as the University's Board of Regents is not a "person" under Section 1983 and thus not subject to suit under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989);[4]

The Eleventh Amendment to the U.S. Constitution also bars Plaintiff's claims against the Board for monetary relief. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-431, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).[5] The same Eleventh Amendment immunity bars Plaintiff's claims against the Board for prospective relief, including injunctive relief. *Alabama v. Pugh*, 438 U.S. 781, 781-782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Campbell v. University of Louisville*, 862 F. Supp. 2d 578 (W.D. Ky. 2012). Accordingly, the Court should dismiss Plaintiff's Section

---

[4] See also, *McKenna v. Bowling Green State Univ*., 568 F. App'x. 450, 456 (6th Cir. 2014) (state university and its board may not be sued under Section 1983 because they are not "persons" under the Act); *McPike-McDyess v. Regents of the Univ. of Michigan*, No. 14-14658, 2015 WL 626769, at *1 (E.D. Mich. Feb. 12, 2015) ("it is well-established that states, state entities-such as the University of Michigan Board of Regents-and state officials sued in their official capacities are not 'persons' subject to suit for constitutional violations under 42 U.S.C. § 1983"); *Min Li v. Qi Jiang*, 38 F. Supp. 3d 870, 879 (N.D. Ohio 2014) (state university could not be sued under Section 1983 because it is not a "person" under Section 1983 and holding that "claims may not be brought against instrumentalities of a state, such as state universities").

[5] As mentioned above, Plaintiff named the Board of Regents as a Defendant and purported to name two defendants, "individually," which Defendants must be understood to mean in their individual (rather than official) capacities. Plaintiff does not state that he is suing the Regents in their individual capacities and, more importantly, named the Regents as a Board, which he correctly identifies in paragraph 5 as a "body corporate."

1983 claims against the Board of Regents with prejudice as a matter of law on this ground alone.

### III. THE COURT SHOULD ALSO DISMISS PLAINTIFF'S ONLY FEDERAL COUNT BECAUSE IT IS FAILS TO STATE A CLAIM ON OTHER GROUNDS

Plaintiff's Section 1983 count fails to state a claim upon which relief can be granted on additional grounds: he has alleged no constitutionally cognizable interest that would be protected under the Fourteenth Amendment Due Process Clause. As demonstrated below, he has not alleged (and cannot allege) the deprivation of any property or liberty interest, and these claims fail as a matter of law.[6]

#### A. The Court Should Dismiss Plaintiff's Section 1983 Claim

##### 1. Plaintiff Does Not Plead a Protected Property Interest in His Clinical Privileges Under the Medical Staff Bylaws

As the Sixth Circuit explained, "due process rights attach whenever a petitioner asserts a protected liberty or property interest, [and to] establish a

---

[6] Plaintiff offers three claimed interests that UMH alleged deprived him of without due process. First, he asserts that UMH stripped Plaintiff of his medical staff privileges in violation of the medical staff bylaws (Complaint, ¶105), which he in turn claims are contract between himself and UMH. Second, he asserts that UMH infringed a liberty interest in his "good name, reputation, honor, integrity, and character, and in pursuing his chosen profession" without due process. *Id*. at ¶¶108-111. Third, he suggests that the University arbitrarily reduced his salary without due process. *Id.* at ¶¶112 & 117.  Established case law is clear that none of these constitute a cognizable property or liberty interest under the Fourteenth Amendment Due Process Clause.

protected liberty or property interest, the petitioner must demonstrate that the Constitution or a federal or state statute grants him a protected right." *Camara v. Gonzales*, 166 Fed. Appx. 840, 843, 2006 U.S.App. LEXIS 3827, at *9, 2006 WL 357883, at *3 (6th Cir. Feb. 16, 2006).

In *Board of Regents v. Roth*, 408 U.S. 564 (1972), the Supreme Court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id*. at 92. A constitutionally protected property interest is not created by the Constitution, but rather by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." *Id*. Moreover, the Sixth Circuit has clarified that "a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).

In the case at bar, nothing in Michigan law indicates or prescribes that a physician has a cognizable property interest in clinical privileges or medical staff

membership.[7] Plaintiff can cite no state statute which establishes such a property right, and instead Michigan law is clear (contrary to Plaintiff's claims) that hospital medical staff bylaws do not create a contract between the hospital and the physician and do not grant a physician contractual rights.

Courts have recognized that Medical Staff Bylaws do not contain or demonstrate either the consideration or mutuality of obligation necessary to create a contract between the physician and the hospital. Instead, hospital boards in Michigan have a preexisting statutory duty to adopt bylaws, rules and policies for eligibility and qualifications of medical staff. M.C.L. §331.6.

---

[7] No court in Michigan, or any other court applying Michigan law, has recognized a property interest in a physician's clinical privileges. In *Keeler v. Hurley Med. Ctr.*, No. 16-CV-11268, 2017 WL 8791912 (E.D. Mich. Nov. 27, 2017), the plaintiff was a physician assistant and brought a due process claim over his removal from the emergency department. The court said that, "assuming plaintiff is correct that 'medical staff privileges are a property right,' defendants removed those privileges only within the ED, not elsewhere at HMC." In a footnote, however, the Court noted that the only authority plaintiff cited for the proposition that the plaintiff had a property right in his clinical privileges, was *Benjamin v. Schuller*, 400 F. Supp. 2d 1055, 1066 n.10 (S.D. Ohio 2005), but this was an Ohio case in which the parties agreed that under Ohio law plaintiff had a property interest in his medical privileges. The Court in *Keeler* concluded that it need not decide the issue. *Keeler*, 2017 WL 8791912 at *12 n.11. In *Clark v. W. Shore Hosp.*, 16 F. App'x 421, 427 (6th Cir. 2001), the Sixth Circuit considered an appeal from the dismissal of a substantive due process claim based on the termination of the plaintiff's medical staff privileges. The Court affirmed mainly because the defendant did not actually terminate his privileges. Early in the opinion, the Court determined that Michigan law applied. In a footnote, without addressing Michigan or any specific state law, the Court noted that "it seems that no other court has recognized the 'effective termination' of medical staff privileges as a possible violation of a protected property interest;…" 16 F. App'x at 427 n.8.

Thus, in *Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 448 (6th Cir. 2014), the Sixth Circuit explained:

> We agree with and follow our prior holdings that Medical Staff Bylaws do not create a contractual relationship in Michigan. Although Bhan may have agreed to abide by the Medical Staff Bylaws by applying for clinical-staff privileges, there is no language that indicates the hospitals intended the Medical Staff Bylaws to constitute a contract with individual physicians or the medical staff. There also is no indication that either Borgess or BCHS provided the requisite consideration for the Medical Staff Bylaws to create an enforceable contract. The hospitals are required by state law to adopt bylaws, rules and policies for eligibility and qualifications of medical staff. M.C.L. §§ 331.6. The hospitals' fulfillment of their statutory obligation to adopt and conform their actions to the bylaws, rules, and regulations does not constitute the kind of separate consideration necessary for a contractual relationship. *Yerkovich v. AAA*, 461 Mich. 732, 740–41, 610 N.W.2d 542, 546 (Mich. 2000) ("Under the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise."). To carry out that responsibility, the hospitals delegated to the *449 medical staff the responsibilities of overseeing the care, treatment, and services provided to practitioners with privileges. The Medical Staff Bylaws primarily describe the manner in which the medical staff is to self-govern and self-organize. The provisions therein that provide for amendment of the Medical Staff Bylaws at any time and that indicate the Board of Trustees is not bound by the medical-staff recommendations further demonstrate a lack of intent to be contractually bound. Accordingly, an enforceable contract does not exist with BCHS or Borgess based upon the Medical Staff Bylaws.

The Eastern District of Michigan also has previously addressed this question and specifically held that medical staff bylaws do not impose contractual obligations on the hospital. *Brintley v. St. Mary Mercy Hosp.*, 904 F.Supp.2d 699 (E.D. Mich. 2012), aff'd, *Brintley v. St. Mary Mercy Hosp.*, 545 Fed. Appx. 484, 487-88 (6th Cir. 2013). In relevant part, this Court explained:

8

> [W]here, as here, the Medical Staff Bylaws merely authorize that the Medical Staff to make recommendations to the Board of Trustees on the granting, suspension or revocation of clinical privileges, and the Board of Trustees is under no obligation to accept the Staff recommendations, see e.g., Bylaws, § 4.6.3.7; § 7.1.2., 4, the Medical Staff Bylaws do not constitute a binding contract. *Van v. Anderson,* [199 F.Supp.2d 550, 563-564 (N.D.Tex.2002)]; see also *Weary v. Baylor Univ. Hosp*., 360 S.W.2d 895, 897 (Tex. Civ. App. 1962) (concluding that medical staff bylaws did not constitute a binding contract because the bylaws only permitted the staff to recommend and advise on reappointments, and the governing body of the hospital was under no obligation to accept or reject the recommendations of the staff). For all of these reasons, the Court finds that Plaintiff has failed to state a claim of breach of contract.  . . .

904 F. Supp. 2d at 722.

Similarly, the Michigan Court of Appeals recently held that medical staff bylaws do not impose contractual obligations. *Estate of Byrnes by Seegert v. Promedica Health Systems, Inc*., 2019 WL 4230687, at *12 (Mich. App. 2019). The Court stated its agreement with the reasoning set forth in *Bhan, supra*, and held that in determining "whether medical staff bylaws give rise to a contractual relationship requires analysis of the bylaws to determine whether they contain the elements of a valid contract. The essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id.* (internal quotations removed).

In analyzing the bylaws before it, the Court noted that the bylaws failed to meet the elements of legal consideration, mutuality of agreement, and mutuality of obligation. First, the Court stated that nothing within the bylaws indicated the

Hospital's "intent to be bound contractually." 2019 WL 4230687, at *12. Second, the Court noted that the bylaws "unambiguously reserve final authority to one entity" and that in doing so "it strains logic to argue that that entity intended the bylaws to bind it contractually." *Id.*, quoting *Bhan*, 579 Fed Appx. at 448.[8]

Here, in the case at bar, the UMH Medical Staff Bylaws disclaim the very contractual obligations Plaintiff needs to support a claim of a property right. [9] Article XVIII, Section 18.1 of the UMH Medical Staff Bylaws state, in relevant part:

---

[8] The Court also held that the bylaws lack "legal consideration required for contract formation." *Id.* at *13. In explaining its reasoning the court stated: Michigan law requires the owner, operator, and governing body of a hospital to assure that all physicians admitted to practice in the hospital are organized into a medical staff, and requires the hospital's board to adopt bylaws, rules, and policies governing the operation and professional work of the hospital and the eligibility and qualifications of its medical staff. In addition, seemingly anyone or anything on a hospital's premises shall be subject to the bylaws, rules, and polices as the hospital board may adopt or authorize to be adopted. Under the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise. Where state law requires the hospital to organize doctors into a medical staff and to issue bylaws to govern the medical staff, and requires physicians on the hospital's premises to abide by the bylaws, one finds no evidence of a bargained-for exchange. *Id.* (internal citations and quotations removed). The Court concluded that bylaws are not "contractually enforceable as a matter of law." *Id.*

[9] Plaintiff made the UMH Medical Staff Bylaws part of his Complaint by relying upon them as central to Count I. They are therefore part of his pleadings and properly attached to and relied upon in support of this Rule 12(b)(6) Motion. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997). This protects the defendant, without which "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

> Nothing contained in these Bylaws or the Rules and Regulations, shall in any manner restrict or limit the authority of the HHCEB [Hospital and Health Centers Board] or the Regents to exercise its respective responsibilities as the governing bodies of the UMHHC and the university under applicable law. (Ex. A, Art. XVIII, Section 18.1).

The above provision evinces UMH's clear intent to <u>not</u> be legally bound by the strictures of the Medical Staff Bylaws.  Further, Article III, Section 3.4 of those Bylaws also recognizes that the Hospital Board has complete discretion to consider factors other than the physician's qualifications in deciding whether to appoint and grant clinical privileges, including but not limited to: consistency with the University's academic mission and goals, consistency with organizational plans and/or meeting contractual obligations. *Id.* at Art. III, Sec. 3.4.

For the above reasons, Plaintiff cannot legitimately claim that UMHS was obligated either to maintain his clinical privileges or to renew his privileges. Any decision to grant or deny privileges is wholly discretionary with UM's HHCEB. For all of these reasons, Plaintiff has no legitimate property right to such privileges or to membership on the UMHS medical staff.

### 2. Because Plaintiff's Due Process Claim Sounds in Contract, it Should Be Dismissed

As noted, Plaintiff's clinical privileges rest upon the Medical Staff Bylaws. Where a plaintiff seeks relief for an alleged due process violation, a claim will not lie where the thrust of the plaintiff's argument is simply breach of contract. *Kaminski v Coulter*, 865 F.3d 339, 348 (6th Cir. 2017). Thus, for instance, in *Kaminski*, a group

of retirees sued a city's emergency manager for modifying terms of their applicable collective bargaining agreements in eliminating retiree health care benefits. The Sixth Circuit, affirming the district court, concluded that plaintiffs failed to state claims for violation of procedural due process because the alleged property right derived from contract. *Id*. The Court explained:

> . . . ***Because a due-process claim is predicated on the deprivation of a constitutionally protected interest without due process of law, the availability of a state breach-of-contract remedy defeats the due-process claim. As the Ramsey court explained, "it is neither workable nor within the intent of [§] 1983 to convert every breach of contract claim against a state into a federal claim***." *Ramsey*, 844 F.2d at 1273 (citations omitted). Consequently, "[a] state breach of contract action is most clearly an adequate remedy for a property deprivation when the only basis for federal jurisdiction is that a state actor is one of the contracting parties." *Ibid.*

*Kaminski, supra* at 348 (emphasis added).[10]   For this reason, too, Plaintiff's procedural due process claim, based on an alleged contract, must be dismissed.

### B. The Court Also Should Dismiss Plaintiff's Section 1983 Claims Against the Board of Regents Based on the Alleged Harm to His Good Name, Reputation, and Pursuit of His Chosen Profession

Plaintiff's due process claim also rests on the supposed harm to his good name, reputation, honor, integrity and ability to pursue his chosen profession.  He claims that the denial of his clinical privileges and "an upcoming scathing and

---

[10] Accord: *Superior Communications v City of Riverview*, 881 F.3d 432, 446 (6th Cir. 2018) (due process claim failed because the plaintiff's alleged property right derived from an agreement and was "at its core, simply a claim for breach of contract").

defamatory report to the State of Michigan Board of Medicine and NPDB" have harmed him. (Complaint, ¶115).

However, even defamation that would impair the plaintiff's employment opportunities is insufficient to invoke due process concerns. *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)).[11] Plaintiff does not allege any harm to his reputation other than the supposed threatened harm to his career.[12] Accordingly, the alleged injury to Plaintiff's reputation fails to state a valid due process claim.

Plaintiff also does not allege (nor could he) that Defendant Board has prevented him from pursuing his chosen profession. While it is true that the freedom to pursue a career and to "to engage in any of the common occupations of life," qualifies as a protected liberty interest, those interests are "narrowly tailored; there is no constitutional right to maintain employment at a specific job within an

---

[11] In *Davis, supra*, at 711-712, the Supreme Court noted: "But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the 'liberty' or 'property' recognized in those decisions. . . . [H]is interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. ***And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws***." (emphasis added).

[12] He also does not claim that he has lost his tenured position, let alone that such loss caused his reputational injury. (See Complaint, ¶12) (stating that he is a tenured professor).

individual's career field." *Kaplan v. Univ. of Louisville*, No. 19-825, 2020 WL 4275042, at *8 (W.D. Ky. July 24, 2020), aff'd, 10 F.4th 569 (6th Cir. 2021) (citing *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989)). In *Parate,* the Sixth Circuit made clear that this liberty interest may protect a person from seeking his or her job anywhere in the State, but it does not afford a plaintiff the right to teach at a specific university. 868 F.2d at 832. As that Court explained, the plaintiff was not deprived of a liberty interest because he could "pursue the teaching profession at any public or private university that requests his services."[13]

Plaintiff's Complaint contains no allegation that Plaintiff has lost his medical license, or cannot pursue clinical privileges or provide clinical services at another hospital or university. For this reason, too, Plaintiff's claim based on deprivation of a liberty interest without due process should be dismissed for failure to state a claim.

## C. The Court Should Dismiss Plaintiff's Section 1983 Claims Against the Board of Regents Based on the Alleged Reduction in His Salary

Plaintiff also claims that Defendants deprived him of procedural due process in reducing his salary by "60%." The Complaint contains no allegation supporting

---

[13] Accord: *Bower v. Vill. of Mount Sterling*, 44 F. App'x 670 (6th Cir. 2002) (denial by municipality of the plaintiff's application for job as police officer did not implicate his liberty interest in pursuing his chosen occupation where the plaintiff did not allege that the defendant prevented him from pursuing his occupation as police officer in a nearby village, with another police force in the state, or with the village police force in the future).

the alleged right to be free from a salary reduction. Plaintiff does not assert the source of the alleged legal entitlement. Nor does Plaintiff claim that he lost his tenure.

Plaintiff's bare claims are insufficient to establish the deprivation of a property right protected by procedural due process. Thus, for instance, in *Ash v. Bd. of Educ. of Woodhaven Sch. Dist.*, 699 F.2d 822 (6th Cir. 1983), the Court rejected procedural due process claims brought by teachers who claimed they had a property interest in their full salaries under Michigan law. The Court disposed of arguments by the plaintiffs that various Michigan statutes and a union contract gave them a legitimate claim to entitlement in specific salaries. *Id* at 825-827. Under *Roth*, therefore, they did not have a protectable property interest. *Id*.[14] For this reason, Plaintiff's procedural due process claim, based on the alleged reduction in his salary, fails to state a claim on which relief can be granted.

## IV. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Under the supplemental jurisdiction statute, 28 U.S.C. § 1367, this Court can exercise discretion to retain subject matter jurisdiction over state law claims when

---

[14] And, in *Swartz v. Scruton*, 964 F.2d 607 (7th Cir. 1992), the Court rejected the plaintiff's claim that the university violated his procedural due process rights when it failed to follow its merit-pay process and awarded a lower pay increase through a process that contradicted its established written process. The Court concluded that the method by which the employer determined pay increases did not establish a constitutionally protected right. *Id*. at 610.

federal claims are dismissed. However, the <u>strong federal custom</u> since *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), is to dismiss state law claims and allow state courts to decide claims arising under their laws. No reason exists to deviate from this established custom, and this Court should therefore decline to exercise of jurisdiction over Plaintiff's state-law claims.

## V.    FURTHER, ALL STATE-LAW CLAIMS AGAINST THE BOARD ARE BARRED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under the Eleventh Amendment, a state is generally immune from being sued in federal court, unless it waives that immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

Thus, the Sixth Circuit has explained that "***the States' constitutional [Eleventh Amendment] immunity from suit prohibits all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature***." *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir.2005) (emphasis added).[15]

---

[15] Further, "the Eleventh Amendment typically bars a federal court from granting even prospective injunctive relief against state officials based on a violation of <u>state law</u>, even if the court would otherwise have supplemental jurisdiction over the state-law claim." *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 486 F. Supp. 3d 1173,

As then U.S. Magistrate Judge Mark Randon recognized:

> The Board of Regents of the University of Michigan is a state agency
> for purposes of the Eleventh Amendment. See Mich. Const. Art. 8 § 5;
> see also *Estate of Ritter by Ritter v. University of Michigan*, 851 F.2d
> 846, 848 (6th Cir.1988) ("the Board of Regents unquestionably is a
> state agency to which the [Eleventh] amendment applies...."). Thus, the
> Board of Regents is entitled to Eleventh Amendment immunity, unless
> some recognized exception applies.

Other federal courts are in accord.[16] Because the Board is protected by Eleventh

Amendment immunity, the Court should dismiss Plaintiff's state-law claims.

## VI.   THE STATE LAW CLAIMS MUST BE DISMISSED FOR THE ADDITIONAL REASON THAT THEY FAIL TO STATE CLAIMS ON WHICH RELIEF CAN BE GRANTED

### A. Plaintiff's Count II (Breach of Contract) Fails to State a Claim

In Count II, Plaintiff claims that Defendants breached the Medical Staff

Bylaws which he asserts constitute a contract. As set forth above, those Medical

Staff Bylaws are not a contract. Count II should be dismissed as a matter of law.

---

1186 (S.D. Ohio 2020) (emphasis added), appeal dismissed, No. 20-4088, 2020 WL
9216634 (6th Cir. Oct. 29, 2020).

[16] *Ali v. Univ. of Michigan Health Sys.-Risk Mgmt.*, No. 11-13913, 2012 WL
3112419, at *3 (E.D. Mich. May 4, 2012), report and recommendation adopted sub
nom. *Ali v. Univ. of Michigan Health Sys.-Risk Mgmt.*, No. 11-13913, 2012 WL
3110716 (E.D. Mich. July 31, 2012), aff'd sub nom. *Ali v. Univ. of Michigan Health
Sys.-Risk Mgmt.*, 523 F. App'x 319 (6th Cir. 2013); *Davis v. Michigan Med. Univ.
Hosp.*, No. 18-CV-14055, 2019 WL 1746261, at *1 (E.D. Mich. Apr. 18, 2019)
(dismissing claims against defendant "Michigan Medicine University Hospital"
because "[t]he university is, in turn, a state entity that enjoys Eleventh Amendment
immunity") (citing *Estate of Ritter by Ritter v. Univ. of Michigan*, 851 F.2d 846, 851
(6th Cir. 1988) and *Ewing v. Bd. of Regents of Univ. of Michigan*, 552 F. Supp. 881,
884 (E.D. Mich. 1982)).

**B. Plaintiff's Tort Claims Count III (Breach of Fiduciary or Public Duties) and Count IV (Intentional Infliction of Emotional Distress) Are Barred By Michigan's Governmental Immunity Law**

Counts III and IV seek monetary relief from the Board of Regents in tort. However, Michigan's governmental tort liability act protects the Board from claims for money damages. That law states, in relevant part, that "[e]xcept as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function." M.C.L. § 691.1407(1).[17] Governmental immunity is "a characteristic of government," and a party suing the government must "plead in avoidance of governmental immunity." *Mack v Detroit*, 467 Mich 186, 203; 649 NW2d 47 (2002).  Plaintiff failed to do so. As the Michigan Court of Appeals recognized, "The University of Michigan (and its governing board, the Board of Regents) is one of the governmental units to which Michigan's governmental immunity statute applies." *Harris v. Univ. of Michigan Bd. of Regents*, 219 Mich. App. 679, 683, 558 N.W.2d 225, 227 (1996).

---

[17] Although the statute provides an exception for government hospitals, that is "with respect to providing medical care or treatment to a patient,…" M.C.L. § 691.1407(4).

That the Board operates a hospital does not take the claims against it outside the scope of governmental immunity.[18] The Court should dismiss Plaintiff's tort claims for damages against the Board based on governmental immunity.

## VII.   THE COURT SHOULD DISMISS COUNT IV (BREACH OF FIDUCIARY AND PUBLIC DUTIES) BECAUSE IT FAILS TO STATE A CLAIM

Count IV of the Complaint presents a unique theory, to say the least. Plaintiff alleges that the Board has duties "to its staff and the community at large to operate the hospital in the interest of public health care" and "to operate the hospital in a manner which permits the staff to meet its professional obligations to patients." (Complaint, ¶¶ 127-128). He then claims that the Board violated these duties by "suppressing dialogue and debate regarding patient care issues," "ignoring the hospital and medical staff by-laws," "improperly influencing members of hospital and staff committees," "intimidating Plaintiff," and "retaliating against Plaintiff." *Id.* at ¶¶129-133, 136.  But, Plaintiff can cite no applicable authority that UMH owes him any such fiduciary duty, and  established Michigan law demonstrates otherwise.

In *In re Karmey Estate*, 468 Mich. 68, 74; 658 N.W.2d 796 (2003), the Michigan Supreme Court explained, that "'[f]iduciary relationship' is a legal term

---

[18] See e.g., *In re Flint Water Cases*, No. 18-10726, 2020 WL 1503256, at *14 (E.D. Mich. Mar. 27, 2020) (tort claims against Hurley Medical Center barred by governmental immunity); *Holliday v. Hurley Medical Center*, 2006 WL 2742055 (Mich. App., No. 267614) (Sept. 26, 2006) (same).

of art, as is the phrase 'confidential or fiduciary relationship.'" The Court defined a

"fiduciary relationship" as:

> [a] relationship in which one person is under a duty to act for the benefit
> of the other on matters within the scope of the relationship. Fiduciary
> relationships— such as trustee-beneficiary, guardian-ward, agent-
> principal, and attorney-client— require the highest duty of care.
> Fiduciary relationships [usually] arise in one of four situations: (1)
> when one person places trust in the faithful integrity of another, who as
> a result gains superiority or influence over the first, (2) when one person
> assumes control and responsibility over another, (3) when one person
> has a duty to act for or give advice to another on matters falling within
> the scope of the relationship, or (4) when there is a specific relationship
> that has traditionally been recognized as involving fiduciary duties, as
> with a lawyer and a client or a stockbroker and a customer.

468 Mich. at 74 n.2.

Michigan courts have been reluctant to extend the cause of action for breach

of fiduciary duty beyond the traditional context of those outlined in subsection (4)

above. *Ford Motor Co v Ghreiwati Auto*, 945 F. Supp. 2d 851, 865 (E.D. Mich.

2013).   No authority in Michigan supports the proposition that a hospital has a

fiduciary duty to physicians in making decisions about clinical privileges or

suspension of the same. In fact, the only non-binding authority found with respect

to medical staff decision-making squarely rejected it. *O'Byrne v. Santa Monica-*

*UCLA Med. Ctr.*, 94 Cal. App. 4th 797, 811–12, 114 Cal. Rptr. 2d 575, 586 (2001)

("Plaintiff cites no cases holding that a hospital has a fiduciary relationship with its staff members" and dismissing breach of fiduciary duty claim as a matter of law).[19]

## VIII. THE COURT SHOULD DISMISS ALTERNATIVELY DISMISS PLAINTIFF'S COUNT IV (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) BECAUSE IT FAILS TO STATE A CLAIM

Count IV seeks relief for intentional infliction of emotional distress. However, the Complaint contains bare legal conclusions and therefore states no valid claim. It states only that "Defendants' actions, statements, and conduct were, and continue to be, extreme, outrageous, and beyond the bounds of common decency in a society."

As the Michigan Court of Appeals explained:[20]

> The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. "*Roberts v. Auto–Owners Ins. Co*., 422 Mich. 594, 602, 374 N.W.2d 905 (1985), citing *Ross v. Burns*, 612 F.2d 271, 273 (6th Cir. 1980). [I]n a contractual setting, a tort action must rest on a breach of duty distinct from contract. *Id.,* 422 Mich. at 603–604, 374 N.W.2d 905. Mere failure to perform an obligation under a contract "cannot give rise to a negligence cause of action in tort. *Id*. at 604, 374 N.W.2d 905.

The Court of Appeals has also explained how "outrageous" the conduct alleged must have been:

---

[19] Indeed, the duties Plaintiff relies upon are claimed to benefit <u>patients</u> rather than himself. Accordingly, even assuming *arguendo* that those duties were fiduciary ones, Plaintiff could not recover for their alleged violations.

[20] *Runions v. Auto-Owners Ins. Co*., 197 Mich. App. 105, 109, 495 N.W.2d 166, 168 (1992) (internal quotations omitted).

To state a claim for intentional infliction of emotional distress, plaintiffs must allege that defendant's actions are extreme and outrageous:

> "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, **674 and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the *246 community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
>
> "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

*Ferrell v. Vic Tanny Int'l, Inc.*, 137 Mich. App. 238, 245–46, 357 N.W.2d 669, 673–74 (1984) (quoting 1 Restatement of Torts 2d § 46, Comment d, p. 73).[21]

---

[21] *Sawabini v. Desenberg*, 143 Mich. App. 373, 383, 372 N.W.2d 559, 565 (1985) (court should have granted summary judgment of plaintiff physician's claim that his attorney wrote a letter to his malpractice carrier, copied to codefendants' attorneys and another physician involved in a similar lawsuit and stating that it was proper for physician to maintain known drug abusers on limited quantities of drugs abused). *Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, 2011 WL 1641898 at *8 (E.D. Mich., May 2, 2011) (emphasizing the demanding nature of the standard for intentional  infliction of emotional distress claims under Michigan law, and stating that "it is not sufficient to show [the existence of IIED] that the defendant acted tortiously, intentionally, or even criminally"). See also *Charest v. Citi Inv. Grp. Corp.*, No. 330775, 2017 WL 2212110, at *5 (Mich. Ct. App. May 18, 2017) (allegation that the defendant submitted a claim to the sheriff for surplus funds from a mortgage foreclosure sale, with the ulterior motive of denying the plaintiff access to the funds so as to impede his ability to redeem was not sufficiently outrageous).

In this case, Plaintiff does not meet the threshold. Instead, he merely claims that Defendants turned down his renewal of clinical privileges and that his salary has been reduced. These claimed facts fall far short of the applicable standard under Michigan law.  Indeed, Plaintiff did not even plead that he actually suffered severe emotional distress. Accordingly, the Court should dismiss Count IV for failure to state a valid claim.

## IX.   THE COURT SHOULD DISMISS ALSO DISMISS PLAINTIFF'S COUNT V (RETALIATION)

Count V asserts some form of retaliation. Plaintiff simply alleges that he "sent two letters that were very critical of how the health system operated along with an editorial criticizing how things were done at the medical center from both an administrative as well as a clinical standpoint. Plaintiff also cited the extent of the involvement of Mike Mulholland, then-Chairman of the Department of Surgery in rearranging staff and leadership." (Complaint, ¶149). He identifies the date of one such letter as having been sent about eight years ago. (Complaint, ¶150).

Plaintiff nowhere identifies any statutory or other legal protection created by these letters. As this Court has previously stated, the notice pleading standard "does not require detailed factual allegations," but it "does require more than the bare assertion of legal conclusions or an unadorned, the-defendant-unlawfully-harmed-me accusation." *Tomaszycki v. Avila*, No. 18-10135, 2018 WL 2009587, at *1 (E.D. Mich. Apr. 30, 2018) (Drain, J.) (internal quotations and citations omitted). Further,

23

"[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* Similarly, Plaintiff's allegations of retaliation are conclusory and not sufficient to state a claim: "bare allegations of malice," are "not enough to establish retaliation claims." *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001). For these reasons, the Court should dismiss Count V.

## X. THE COURT SHOULD DISMISS PLAINTIFF'S COUNT VI (FOR INJUNCTIVE RELIEF) BECAUSE THERE IS NO UNDERLYING ACTIONABLE CLAIM

Count VI seeks injunctive relief. However, as set forth above, Plaintiff has no underlying actionable claims. Count VI should be dismissed for this reason, too.[22]

## XI. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR FAILURE TO EXHAUST HIS REMEDIES

The Medical Staff Bylaws and Rules and Regulations, both of which Plaintiff relies upon as central to his Complaint, *Weiner, supra,* foreclose Plaintiff's claims until he has exhausted the fair hearing process set forth in the Bylaws. The Rules and Regulations, Section 1.1, entitled "Exclusive Remedy," state that "[i]f an adverse ruling is made with respect to a Medical Staff Membership, Staff status or clinical privileges at any time, regardless of whether the individual is an Applicant

---

[22] See, e.g., *Riley–Jackson v. Ocwen Loan Servicing*, 2013 WL 5676827, at *5 (E.D.Mich. Oct.18, 2013) (Rosen, C.J.); see also *Terlecki v. Stewart*, 278 Mich.App. 644, 663, 754 N.W.2d 899 (2008) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action."); *Henry v. Dow Chem. Co.*, 473 Mich. 63, 96–97 (2005) ("It is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy.").

or a Member, the individual shall follow and abide by the remedies afforded by the Bylaws and this Fair Hearing Plan before resorting to a formal legal action." (Ex. B, Rules and Regulations, §1.1).[23]  Plaintiff does not (nor could he) claim that he has exhausted those remedies. Accordingly, his claims should be dismissed.[24]

## **CONCLUSION**

For the foregoing reasons, Defendant Board of Regents respectfully requests that this Honorable Court grant this Motion, dismiss the Complaint against it with prejudice, and award its costs and attorneys' fees so wrongfully sustained.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ David A. French
David A. French (P31944)
Jonathon A. Rabin (P57145)
Larry R. Jensen  (P60137)
Attorney for Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
dfrench@hallrender.com

---

[23] In addition, the Medical Staff Bylaws in Section 5.1, require Plaintiff to abide by the Rules and Regulations. (Ex. A, §5.1).  See also Ex. A, §3.6-1).

[24] See e.g., *Michigan Ass'n of Chiropractors v. Blue Cross Blue Shield of Michigan*, 300 Mich. App. 551, 834 N.W.2d 148 (2013) (chiropractor, a proposed class representative, claimed he and others were denied reimbursement by insurer but failed to establish that he had exhausted his contractual remedies therefore could not be an adequate class representative).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2022, I electronically filed the foregoing document and this Certificate of Service with the Clerk of the Court using the ECF system, which will send notification of such filing to attorneys of record at their registered e-mail addresses.

/s/ David A. French
David A. French
101 West Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
dfrench@hallrender.com

4820-8795-0590v5

26