## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN DOE, M.D.,

      Plaintiff,

v.

THE BOARD OF REGENTS OF
THE UNIVERSITY OF MICHIGAN,
MARIE LOZON, M.D., and
JUSTIN DIMICK, M.D., Individually,

      Defendants.

CASE NO. 21-cv-13032-GAD-CI
HON. GERSHWIN A. DRAIN

_____/

| | |
|---|---|
| MIDWEST LEGAL PARTNERS, PLLC<br>By: **SAIF R. KASMIKHA** (P74320)<br>42705 Grand River Avenue<br>Suite 201<br>Novi, MI   48375<br>(248) 344-4570<br>Attorneys for Plaintiff<br>skasmikha@midwestlegalpartners.com | HALL, RENDER, KILLIAN, HEATH &<br>LYMAN, PC<br>By: David A. French (P31944)<br>Attorneys for Defendant<br>101 W. Big Beaver Rd., Ste. 745<br>Troy, MI 48084<br>dfrench@hallrender.com |
| CUMMINGS, McCLOREY, DAVIS<br>& ACHO, P.L.C.<br>By: **RONALD G. ACHO**  (P23913)<br>17436 College Parkway<br>Livonia, MI 48152<br>(734) 261-2400<br>Attorneys for Plaintiff<br>racho@cmda-law.com | |

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT BOARD OF REGENTS OF UNIVERSITY OF MICHIGAN'S MOTION TO DISMISS

**NOW COMES** Plaintiff John Doe, M.D., by and through his attorneys, Cummings, McClorey, Davis & Acho, and for his Response to the Board of Regents for the University of Michigan's Motion to Dismiss Plaintiff's Complaint Pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) prays that this Honorably Court deny the Defendant's motion, or in the alternative, grant leave for Plaintiff to amend his Complaint, or both.

Respectfully Submitted,

/s/ *Ronald G. Acho*
Cummings, McClorey, Davis & Acho, P.L.C.
17436 College Parkway
Livonia, MI 48152
(734) 261-2400
Attorneys for Defendant
racho@cmda-law.com
Dated: January 25, 2022         (P 23913)

Saif R. Kasmikha (P74320)
Midwest Legal Partners, PLLC
Attorney for Plaintiff
42705 Grand River Avenue, Suite 201,
Novi, MI 48375
Dated: January 25, 2022         Office: (248) 344-4570
E-mail: skasmikha@midwestlegalpartners.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN DOE, M.D.,

      Plaintiff,

v.                            CASE NO. 21-cv-13032-GAD-CI
                                   HON. GERSHWIN A. DRAIN

THE BOARD OF REGENTS OF
THE UNIVERSITY OF MICHIGAN,
MARIE LOZON, M.D., and
JUSTIN DIMICK, M.D., Individually,

      Defendants.

_____/

| | |
|---|---|
| MIDWEST LEGAL PARTNERS, PLLC<br>By: **SAIF R. KASMIKHA** (P74320)<br>42705 Grand River Avenue<br>Suite 201<br>Novi, MI   48375<br>(248) 344-4570<br>Attorneys for Plaintiff<br>skasmikha@midwestlegalpartners.com | HALL, RENDER, KILLIAN, HEATH &<br>LYMAN, PC<br>By: David A. French (P31944)<br>Attorneys for Defendant<br>101 W. Big Beaver Rd., Ste. 745<br>Troy, MI 48084<br>dfrench@hallrender.com |
| CUMMINGS, McCLOREY, DAVIS<br>& ACHO, P.L.C.<br>By: **RONALD G. ACHO**  (P23913)<br>17436 College Parkway<br>Livonia, MI 48152<br>(734) 261-2400<br>Attorneys for Plaintiff<br>racho@cmda-law.com | |

_____/


## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT
## BOARD OF REGENTS OF UNIVERSITY OF MICHIGAN'S MOTION TO
## DISMISS

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.....................................................................................ii

ISSUES PRESENTED..........................................................................................iv

MOST CONTROLLING AUTHORITY.....................................................................v

INTRODUCTION ...............................................................................................1

STATEMENT OF FACTS ......................................................................................3

STANDARD OF REVIEW ....................................................................................8

LAW AND ARGUMENT ......................................................................................8

   I.   Defendant has not Established that it is an Arm of the State ..........................8

   II.  Plaintiff Maintains a Cognizable Claim Under 42 U.S.C. 1983 ....................9

   III.   Plaintiff Maintains a Cognizable Fourteenth Amendment Claim...............14

   IV.   Injunctive Relief is Warranted under the *Ex Parte Young* Exception to
Sovereign Immunity ...............................................................................18

   V.  Plaintiff Maintains a Cognizable Retaliation Claim .....................................19

   VI.   Plaintiff Maintains a Cognizable Intentional Infliction of Emotional
Distress Claim........................................................................................20

   VII.  Plaintiff's Tort Claims Are Invulnerable to Governmental Immunity .......22

   VIII. Plaintiff Maintains a Cognizable Breach of Fiduciary and Public Duties
Claim.....................................................................................................23

   IX.   The Immediate Harm Obviates any Alleged Failure to Exhaust Remedies
     23

   X.  Leave Should be Given to Amend Plaintiff's Complaint ..............................25

CONCLUSION.................................................................................................25

CERTICATE OF SERVICE...................................................................................27

# INDEX OF AUTHORITIES

## Cases

*Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001) ...........................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................14

*Bassett v. National Collegiate Atheletic Ass'n* , 528 F.3d 426 (6th Cir. 2008) ........14

*Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 369 (2001) ............15

*Benison v. Ross*, No. 12-15226, 2015 WL 13688201, at *7 (E.D. Mich. Mar. 31, 2015) ...........................................................................................................................28

*Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) ..................................................18

*Boler v. Earley*, 865 F.3d 391 (6th Cir. 2017) ................................................... 27, 28

*City of Oklahoma v. Tuttle*, 471 U.S. 808,  (1985) ...................................................18

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................................13

*Danese v. Asman*, 670 F. Supp. 709 (E.D. Mich. 1987) ..........................................13

*Doe v. Mitchell*, No. 2:20-CV-00459, 2020 WL 6882601 (S.D. Ohio Nov. 24, 2020) ...........................................................................................................................36

Doe v. Porter, 370 F.3d 558 (6th Cir. 2004) ..............................................................35

*Doe v. Wigginton*, 21 F.3d 733 (6th Cir. 1994) ............................................... passim

*Early Detection Center, PC v. New York Life Ins. Co*., 157 Mich. App. 618; 403 N.W.2d 830 (1986). ...................................................................................................30

*Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) ..................................................29

*Ex Parte Young,* 209 U.S. 123 (1908) ........................................................... 4, 26, 27

*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005) ....................................25

*Fritz v. Charter Tp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) ............................13

*Gragg v. Ky. Cabinet for Workforce Dev*., 289 F.3d 958 (6th Cir.2002) ...............15

*Graham v. Ford*, 237 Mich. App. 670, 674; 604 N.W.2d 713 (1999) ....................30

*Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir. 2009) ............................ 22, 23, 24, 25

*Hafer v. Melo*, 502 U.S. 21 (1991) ........................................................... 19, 20, 21

*Hartman v. Acton*, No. 2:20-CV-1952, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020) ...........................................................................................................................34

*Hensley Mfg. v. ProPride*, Inc. 579 F.3d 603, 609 (6th Cir. 2009) .........................14

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) ................................28

*In re Duane v. Baldwin Tr*., 274 Mich. App. 387; 733 N.W.2d 419, 427 (2007) ...32

*Kentucky v. Graham*, 473 U.S. 159 (1985) ..............................................................20

*Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006) .....................................................13

*Med Corp. v. City of Lima*, 296 F.3d 404 (6th Cir.2002) ........................................24

*Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) ..................................................14

*Nieman v. NLO Inc*., 108 F.3d 1546, 1554 (6th Cir. 1997) .....................................14

*Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987) ..........................13

*Odom v. Wayne County*, 482 Mich. 459; 760 N.W.2d 218, 224-25 (2008) ............32
*Quinn v. Shirey*, 293 F.3d 315 (6th Cir. 2002) .........................................................26
*Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603; 374 N.W.2d 905 (1985) ...30
*Ross v. Consumers Power*, 420 Mich. 567; 363 N.W.2d 641 (1984).......................32
*Salephour v. University of Tenn.*, 159 F.3d 199 (6th Cir 1998) ..............................33
*Southwest Williamson County Cmty. Ass'n Inc. v. Slater*, 173 F.3d 1022, 1035 (6th
    Cir. 1999)........................................................................................................14
*Warren v. June's Mobile Home Village & Sales.*, Inc., 66 Mich. App. 386; 239
    N.W. 380 (1976)..............................................................................................30
*Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).........................................15
*Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)...................................................29
*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)...................... 19, 20, 21
*Wysocki v. International Business Machine Corp.*, 607 F.3d 1102 (6th Cir. 2010).33

## Statutes
M.C.L. § 691.1407(1) ..............................................................................................31

## Rules
Federal Rule of Civil Procedure 10(a) ....................................................................35
Federal Rule of Civil Procedure 12(b)(6) ...................................................... passim
Federal Rule of Civil Procedure 65(b)(1)(A) .........................................................34
Federal Rule of Civil Procedure 8 ..........................................................................13
Federal Rule of Civil Procedure 12(b)(6) ...................................................... 13, 14
Federal Rule of Civil Procedure 56 ........................................................................33

## Constitutional Provisions
The Eleventh Amendment .......................................................................................15
The Fourteenth Amendment ............................................................................ passim

## ISSUES PRESENTED

I.   **DOES PLAINTIFF HAVE COGNIZABLE CLAIMS WHEN DEFENDANT HAS NOT ESTABLISHED THAT IT IS AN ARM OF THE STATE?**

Plaintiff Answers: Yes
Defendants Answer: No.

II.  **DOES PLAINTIFF MAINTAIN A COGNIZABLE FOURTEENTH AMENDMENT WHEN MICHIGAN MEDICINE EXTENDED HIS SUSPENSION WITHOUT DUE PROCESS IN DEFIANCE OF CUSTOM AND TRADITION?**

Plaintiff Answers: Yes
Defendants Answer: No.

III. **DOES PLAINTIFF MAINTAIN COGNIZABLE STATE CLAIMS WHEN DEFENDANTS WERE NOT ACTING IN GOOD FAITH WHEN THEY SUSPENDED HIM AND DECREASED HIS PAY?**

Plaintiff Answers: Yes
Defendants Answer: No.

## MOST CONTROLLING AUTHORITY

1.  Federal Rule of Civil Procedure 15(a)

2.  Federal Rule of Civil Procedure 12(b)(6)

3.  42 U.S.C. § 1983

## **INTRODUCTION**

Plaintiff, John Doe,  is a tenured professor and a highly accomplished plastic surgeon with virtually peerless credentials. He maintained clinical privileges with the University of Michigan and the University of Michigan Health System (collectively "Michigan Medicine") until Defendant Marie Lozon, M.D. and Defendant Justin Dimick, M.D. (collectively "the individual Defendants"), together with Michael Mulholland, M.D., the Senior Associate Dean of Clinical Affairs, conspired against Plaintiff. Mulholland is being added as a party Defendant in Plaintiff's proposed Amended Complaint.

Plaintiff was summarily suspended, and his income was drastically reduced in the interim. When Plaintiff saw no other recourse – after having tried for an earlier resolution of the issue – he filed the instant Complaint featuring a Fourteenth Amendment claim as is made actionable by 42 U.S.C. § 1983.

Additionally, Plaintiff asserted supplemental claims for a breach of contract, intentional infliction of emotional distress, breach of fiduciary duties and retaliation. The foregoing causes of action were leveled against the individual Defendants, and the Board of Regents of the University of Michigan. Subsequently, Defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), contending that all of Plaintiff's claims merit a dismissal for a variety of reasons.

Regrettably, the filings by Defendants contain material misrepresentations.

These misrepresentations have recently been discovered by Plaintiff. Discovery will no doubt reveal other misrepresentations of fact.

Plaintiff will be presenting facts to clarify why a hearing on the preliminary injunction request is appropriate and necessary. While Plaintiff makes efforts to distinguish between Defendants, because of their unity of purpose it is sometimes impossible to allude to one Defendant without implicating the others. In such instances the plural form of the word "Defendants" is used in this brief.

## EXECUTIVE SUMMARY

- Plaintiff is seeking a preliminary injunction from an improper suspension.

- Defendants' material misrepresentations of fact should cause this Court some concern.

- Plaintiff is a world-renowned pediatric plastic surgeon whose accomplishments are too numerous to mention.

- Dr. Doe is the only Plastic Surgeon in the country/world that is the principal investigator of a plastic surgery training grant from the National Institutes of Health to teach surgical trainees from all over the country on how to become surgical scientists.

- Plaintiff won the best published plastic surgery paper award of the year in multiple years including 2004, 2011, two in 2013, and 2015 from multiple national plastic surgery organizations.

- Dr. Doe's publications have served as the gold standard for prospective surgeons wishing to pursue his field, and boasts an unblemished clinical record, spanning over 28 years at the University of Michigan.

- The suspension was improperly placed against Plaintiff, both as a matter of equity and against the University's own bylaws.

2

- Contrary to the representations by Defendants, Dr. Doe is prevented by Defendants from working at St. Joseph's and the Veterans Affairs Hospitals.

- There is nothing that has been alleged by Defendants that in any way impairs Plaintiff's ability.

- An evidentiary hearing is necessary in order to establish Dr. Doe's request for a preliminary injunction and to correct the misrepresentations by Defendants.

## <u>STATEMENT OF FACTS</u>

Plaintiff Doe's numerous accomplishments are set forth in his Complaint and are not set forth here in any great detail. (**Dkt. No. 1**, *Plaintiff's Complaint*, Page ID 3-10). On several occasions, Dr. Doe reported to Michigan Medicine certain administrative concerns, especially about Dr. Michael Mulholland. Thereafter, Michigan Medicine suddenly raised three trivial issues – none of which led to a negative outcome – and used them to justify an indefinite suspension of Plaintiff's clinical privileges. **Dkt. No 1**, Page ID. No. 9-10. Dr. Doe was also advised that he would be reported to the State of Michigan Board of Medicine, and to the National Practitioner Data Bank. *Id*. at Page ID. No. 10. The three issues were investigated and were ultimately deemed nonissues. *Id*.

Undeterred, Michigan Medicine reopened the three trivial issues, this time through the Office of Clinical Affairs (OCA) – a different department – to conduct a peer-reviewed determination of Dr. Doe's future, along with that of his patients. Right from the start, Michigan Medicine neither complied with its own policies, nor

with administrative best practices including the maintenance of confidentiality. Dr. Doe was compelled to travel to the State of Kansas and enroll in a program designed to address extreme behavioral concerns. Plaintiff, unlike the participants, was not dealing with such serious misbehavior as engaging in sexual relations with patients, or substance abuse. *Id.* at Page ID 11. Dr. Doe has been prevented from practicing for over nine months, for no given reason. That is why his being sent to Kansas was only a ruse by Defendant.

Unaccountably, Defendant Lozon repeatedly told Dr. Doe that the entire process including the investigation would take more than 30 days to complete, and that his suspension would be reported to the State of Michigan Board of Medicine as a result. *Id.* at Page ID. 12. This ensured that Dr. Doe's records would already be tarnished long before the investigation was concluded. *Id.* at Page ID 12. Dr. Doe was offered 30 days to formally request a Fair Hearing,[1] which he did. *Id*. The Fair Hearing has yet to be scheduled, and has the potential not to be concluded for another two years, during which time Dr. Doe would remain suspended from practice, and,

---

[1] A Fair Hearing is part of the Michigan Administrative Hearing System. It features an Administrative Law Judge who adjudicates the hearing. Plaintiff would be permitted to question agency representatives and witnesses. *See* Michigan .gov, https://www.michigan.gov/documents/ADMINISTRATIVEHEARINGS_81632_7. brochure.pdf , last accessed 1/20/22.

even before any determination of any wrongdoing whatsoever[2]. *Id.*

Defendant Dimick, is the Chair for the Department of Surgery at Michigan Medicine. On June 1, 2021, Defendant Dimick cut Plaintiff Dr. Doe's salary by approximately 60%. At the time, Plaintiff was advised that his salary was being cut because of the suspension of his privileges at the Executive Committee on Clinical Affairs behest on March 9, 2021 by Defendant Dimick. At the time, Defendant Dimick advised Plaintiff that the salary reduction was owing to the resulting inability [of Plaintiff Doe] to have a productive clinical practice." (See **Exhibit A**: Affidavit). Defendant Dimick's actions were in direct violation of Section 8.7-1(b) of the Medical Bylaws mandates that a "precautionary suspension" can remain in effect "in no event longer than fourteen (14) days." The violation is reflected in the fact that Plaintiff's salary was docked 84 days after the 'precautionary suspension' was instituted, and its continuation is an ongoing violation of Section 8.7-1(b).

Under § 8.7-1(b) of the Medical Bylaws, a 'precautionary suspension' can remain in effect "in no event longer than fourteen days. According to the Bylaws:

> Precautionary suspension is an interim step in the professional review activity, but it is not a complete Profession Review Action. It is not final, and it is not disciplinary. Rather, it facilitates preliminary review and inquiry, and shall be removed or converted to summary action pending any resulting investigation within fourteen (14) days.

---

[2] A current physician on suspension is using this process, and it has already been almost 18 months, with no conclusion in sight.

Defendant Dimick has admitted that he made the decision to reduce Plaintiff's pay after consulting and getting the okay from OCA--admitted collusion between the committees to stymie his practice and exert leverage over Plaintiff to coerce him to resign from Michigan Medicine. Defendant Dimick's actions are manifestly unfair, capricious, arbitrary and discriminatory because other surgeons that are tenured professors in the Medical School who are undergoing the same fair hearing process were not subject to a salary reduction. The actions against Plaintiff constitutes a deviation from the custom at Michigan Medicine; Plaintiff is aware of another instance where the supervisor of another tenured professor vehemently opposed such a salary cut.

Section 1.05 of the Bylaws of the University of Michigan Board of Regents requires a majority vote of the members of any legislative group within the University, unless there is a specific provision to the contrary. Section 5.09 of the Bylaws of the University of Michigan Board of Regents indicates that a suspension of pay occurs only in cases of a crime. Even then, a Committee must fairly adjudicate the matter before a salary reduction or suspension can occur. The Regent's Bylaw Section 5.09 clearly requires a full and fair process that eschews premature punishment or prejudgment before a thorough and complete adjudication, preserving the status quo during the process.

As Chair for the Department of Surgery at Michigan Medicine, and Plaintiff

6

Dr. Doe's supervisor, Defendant Dimick is responsible for assigning cases to both St. Joseph's Hospital in Ann Arbor and the Veteran Affairs Hospital. Defendant Dimick has admitted that he could assign cases to Plaintiff Dr. Doe at these two hospitals, but he has chosen not to do so. (**Exhibit A**: Aff.). Notwithstanding the fact that Defendant Dimick is preventing Plaintiff Dr. Doe from practicing at these hospitals, Defendants have argued that Plaintiff Dr. Doe's ability to work at these hospitals shows that he can have a productive clinical practice: "Plaintiff's claim that he will not be able to engage in his profession if he is not reinstated at UMH [University of Michigan Hospital] is likewise unsupported by any record evidence."

While Plaintiff still has his license to practice medicine, the suspension, coupled with the ongoing delays which triggered reporting, etc., makes it difficult for him, or anybody in his position, to obtain staffing privileges at any other hospital. Plaintiff Dr. Doe cannot just simply get staffing privileges at other hospitals while he awaits the Fair Hearing. Furthermore, as an employee of Michigan Medicine, even if he could do that he would have to obtain their permission.

Count I of Dr. Doe's Complaint levels a federal claim of a violation of the Fourteenth Amendment, made actionable by 42 U.S.C. 1983. In addition, Plaintiff alleges supplemental claims of: Count II - Breach of Contract, Count III - Breach of Fiduciary and Public Duties, Count IV - Intentional Infliction of Emotional Distress, Count V - Retaliation and Count VI - Injunctive Relief.

7

## STANDARD OF REVIEW

Defendants bring their motion to dismiss under the auspices of the Fed.RCiv.P. 12(b)(6). Courts adjudicating a motion to dismiss "must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). They are also directed to "view the complaint in the light most favorable to plaintiff, treat all well-pleaded allegations therein as true, and will dismiss the plaintiff's claims only if it is without doubt that the plaintiff "can prove no set of facts in support of the claims that would entitle him to relief." *Southwest Williamson County Cmty. Ass'n Inc. v. Slater*, 173 F.3d 1022, 1035 (6th Cir. 1999). *Bassett v. National Collegiate Atheletic Ass'n* , 528 F.3d 426 (6th Cir. 2008).

## LAW AND ARGUMENT

### I.    Defendant has not Established that it is an Arm of the State

While it is true, generally – and as Defendant contends – that the Eleventh Amendment bestows sovereign immunity upon the states, such immunity is rife with a "host of exceptions." *Lowe v. Hamilton Cty. Dep't of Job & Fam. Servs*., 610 F.3d 321, 324 (6th Cir. 2010). "One of the more prominent exceptions to the doctrine (of sovereign immunity) *is that state instrumentalities that properly are characterized as political subdivisions, rather than arms of the state, are not entitled to sovereign immunity*." *Id*. (parenthesis added) (emphasis added). The Eleventh Amendment's

8

protections do not cover units of local government. *Id*. citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 369 (2001).

"[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, i.e., that it is an arm of the state." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir.2002). Here, Defendant has made no effort to establish the threshold issue of whether it is in fact an arm of the state. Federal courts do not accept a party's self-serving characterization of itself as an arm of the state at face value, but rather consider the following quadruple factors, as applied to this case: 1) The State of Michigan's potential legal liability if Plaintiff was to prevail; 2) The manner by which the state courts and statutes describe Defendant, as well as "the degree of control and veto power which the state has over" Defendant; 3) Whether state or local officials appoint Defendant's board members; and 4) Whether Defendant's functions comport with "the traditional purview of state and local government." *Lowe*, 610 F.3d 321 at 325.

Plaintiff requires discovery to delve into these issues which were not addressed by Defendant in its brief. For example, "[t]he state's potential legal liability for a judgment against the defendant 'is the foremost factor' to consider in a sovereign immunity analysis." *Id*. Plaintiff has no way of ascertaining this information without the elucidating benefits of discovery.

## II.   Plaintiff Maintains a Cognizable Claim Under 42 U.S.C. 1983

The Plaintiff was placed on a "precautionary suspension" by Michigan Medicine. Notwithstanding the fact that the suspension was merely precautionary, Plaintiff's pay was reduced by 60% by Defendant Dimick, as was implemented by Defendant Lozon.[3] The precautionary suspension with the attendant reduction of Plaintiff's earnings occurred, despite the fact that he had already been exonerated after a review by the University Office of Inclusion and Equity (OIE). So trivial was Plaintiff's conduct[4] as was the subject of the review, that OIE determined that a full investigation was not even warranted under the circumstances. The conduct at issue was not such as would impact, hamper or impede Plaintiff's abilities, let alone Michigan Medicine goals.

The grounds for instituting a precautionary suspension are triggered when a failure to take such action might result in: 1) Imminent danger to the health or safety of any individual and 2) Potential interreference with the orderly operation of Michigan Medicine. Notably, neither ground was met for instituting a precautionary suspension in the first place. Plaintiff was advised that the precautionary suspension would not trigger reporting obligations to the Board of Medicine because it was

---

[3] Admittedly, Plaintiff's Complaint did not explicitly set forth these facts as forms part of Plaintiff's request to be permitted to amend his Complaint.
[4] Plaintiff's conduct at issue was quite trivial, and was as follows: In casual conversation not pertaining to work, a resident asked who Christian Slater, an actor, was. In response, Plaintiff then played a random YouTube movie clip featuring the actor. Coarse language was used in the clip, with Plaintiff having no foreknowledge of that fact.

considered a non-disciplinary review action. The Bylaws were clear that *at no time was a "precautionary suspension" to exceed 15 days*. Nevertheless, Defendant Marie Lozon subsequently informed Plaintiff that the investigation would last longer than 30 days, and would be reported to NPDFB and the State of Michigan Board of Medicine as a result. When offered a Fair Hearing, the Plaintiff agreed to it, but nevertheless almost a year later, no such hearing has been convened.

Plaintiff's present Complaint alleges that the individual Defendants both acted in concert to initiate and extend his suspension and dock his pay in defiance of Michigan Medicine's own policies. Based upon information and belief, these Defendants conspired with proposed Defendant Mulholland to coerce Dr. Doe into resigning from Michigan Medicine. Predicated on the foregoing, Plaintiff asserts a breach of the Due Process Clause of the Fourteenth Amendment as is made actionable by 42 U.S.C. § 1983. The statute provides redress against any person who, under color of state law, deprives another of existing federal constitutional rights or statutorily-given rights. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816, (1985).

To survive a motion to dismiss a claim under 42 U.S.C. 1983, the plaintiff must allege two elements in its complaint: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Plaintiff's Complaint in this case meets both prongs. *See* **Dkt. No. 1**, Page ID 29 where it is stated that

"[a]t all times relevant hereto, Defendants acted under color of state law to deprive Plaintiff of property interest protected by the Constitution of the United States of America." In reliance upon *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), Defendant alleges that "the University's Board of Regents is not a 'person' under Section 1983 and thus [is] not subject to suit under Section 1983."[5]

Defendant is not entitled to such a blanket immunity. As was held by the Michigan Court of Claims Judge Michael Kelly, "existing case law does not 'stand for the notion that any decision regarding academics is beyond review for a court. That is, while (case law) describes a number of areas into which a court should be hesitant to intrude, principles of contract and quasi-contract are not among those areas.'"[6] (parenthesis supplied). Defendants' general reliance on *Will, supra* is misplaced, that case being limited in its ambit. In a subsequent case, *Hafer v. Melo*, 502 U.S. 21 (1991), the U.S. Supreme Court clarified the limitations of *Will, supra*.

In *Hafer, supra*, Pennsylvania's new auditor general fired 18 employees who preceded her tenure. Several of the fired employees filed suit against the auditor, alleging that they were fired because of their affiliation with the Democratic party, and seeking monetary damages and reinstatement. The district court consolidated

---

[5] Defendant Board of Regents' Motion to Dismiss, p. 4.
[6] The Detroit Free Press, "Judge: Lawsuit against U-M for switching to online classes can continue." David Jesse. https://www.freep.com/story/news/education/2020/07/28/judge-lawsuit-um-michigan-online-classes/5525665002/ , July 28, 2020. Last accessed 1/21/22.

the cases, and then dismissed them. In doing so, the district court held in pertinent part that "the § 1983 claims against Hafer were barred because, under *Will*, she could not be held liable for employment decisions made in her official capacity as auditor general. *Hafer*, 502 U.S. at 23. The Third Circuit Court of Appeals reversed this last portion of the district court's ruling.

The U.S. Supreme Court then granted certiorari, "to address the question of whether state officers may be held personally liable for damages under § 1983 based upon actions taken in their official capacities." *Id*. at 24. The Court sought to clarify the difference between personal capacity and official capacity lawsuits brought against state officials. The Court, citing *Kentucky v. Graham*, 473 U.S. 159 (1985), emphasized that "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer*, 502 U.S. at 25. As it relates to personal capacity suits the Court held that:

> Personal-capacity suits, on the other hand, *seek to impose individual liability upon a government officer for actions taken under color of state law*. *Thus, on the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right*. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Hafer* 502 U.S. at 25 (internal citations omitted) (emphasis added).

The *Hafer* ruling applies with full force here, where Plaintiff alleges that the individual Defendants acting in concert with others, conspired to deprive the

Plaintiff of his rights. Such rights include suspending him, prolonging his suspension, causing him to be reported to various administrative agencies and docking his pay. The *Hafer* court distinguished *Will*, holding that:

> Of course, the claims considered in Will were official-capacity claims; the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury. To the extent that *Will* allows the construction *Hafer* suggests, however, we now eliminate that ambiguity. *Hafer*, 502 U.S. at 26–27.

## III.   Plaintiff Maintains a Cognizable Fourteenth Amendment Claim

In his Complaint, Plaintiff alleges that Defendants violated his Fourteenth Amendment Due Process rights in depriving him of his property and liberty interests. **Dkt. No. 1**, Page ID 21. The extent of the harm being inflicted upon Plaintiff by Defendants without the FAIR Hearing which he has agreed to is incalculable. The harm not only includes a hefty reduction in his earnings, but more importantly, includes a revocation of his staffing privileges and great reputational and irreparable harm. That Plaintiff has a vested interest in maintaining the accoutrements and trappings of his profession for which he has strived to achieve over many years is irrefutable. In its brief, Defendant takes the position that "nothing in Michigan law indicates or prescribes that a physician has a cognizable property interest in clinical privileges or medical staff membership."[7] Defendant is wholly inaccurate.

---

[7] Defendant Board of Regents' Motion to Dismiss, pp. 6-7.

Contrary to Defendant's assertion, Plaintiff does not just rely upon the Medical Staff Bylaws in maintaining his deprivation of property claim. The customs and traditions at Michigan Medicine relating to how and when a tenured professor might be ousted from his position are of saliency here. *No other tenured professor has been summarily suspended for trivial events not connected to his performance or impeding Michigan Medicine's mission, as happened here*. Nor is Plaintiff's predicament without precedent. In *Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir. 2009), the plaintiff Jay Gunasekera was the Moss Professor of Mechanical Engineering at the Russ College of Engineering and Technology, and had been the Chair of the Department of Mechanical Engineering for fifteen years. *Id*. at 464.

Gunasekera's position in the graduate faculty at the college permitted him to oversee thesis work conducted by graduate students. *Id*. A student alleged rampant plagiarism in connection with graduate students' theses. Two investigations did reveal previously undiscovered plagiarism in peripheral areas having nothing to do with the analysis and conclusion of the theses. The provost of the college instructed the dean to investigate further. The investigation yielded a report which the provost publicized at a press conference. Three faculty members including Gunasekera were faulted "for ignoring their ethical responsibilities and contributing to an atmosphere of negligence toward issues of academic misconduct." *Id*. As a result, the plaintiff

15

was suspended from his graduate faculty position for three years, and was barred from advising graduate students.

Much as Plaintiff here, Gunasekera filed suit in the federal court seeking "compensatory and punitive damages, declaratory, equitable, and injunctive relief, and attorneys' fees and costs" from [the dean] and [provost] for depriving him of his 'property and/or liberty interests in violation of the Due Process Clause of the Fourteenth Amendment'" under 42 U.S.C. § 1983. *Gunasekera*, 551 F.3d at 464. Paring down his claims, the plaintiff alleged: 1) That the college provost violated his due process rights by depriving him of his property interest by suspending him from his Graduate Faculty status without affording him a "meaningful opportunity to be heard," and; 2) That the provost and the dean violated his due process rights when they broadcast accusations that he had facilitated plagiarism without affording him "a meaningful opportunity to clear his name." *Id.* at 465.

Much as in the case at bar, the defendant college provost and dean both filed a motion to dismiss under Rule 12(b)(6), contending *inter alia* that the plaintiff did not have a protected interest, and that his liberty interest claim was unsubstantiated because he rejected "a name-clearing hearing." *Ibid*. The district court granted the motion to dismiss, summarily finding that the plaintiff had no property interest in his graduate faculty status and that even if he did have a liberty interest, he was not entitled to a hearing beyond what the college had already offered. The Sixth Circuit

Court of Appeals reversed. It began by analyzing the Due Process Property claim, as is entirely applicable to the facts in this case.

The Court held that the plaintiff was required to satisfy three elements in order to prevail on the claim that he was unconstitutionally deprived of his property interest in his graduate faculty status. The elements are: "1) that [the plaintiff] has a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that he was deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford him adequate procedural rights prior to depriving him of his protected interest.'" *Gunasekera*, 551 F.3d at 467 citing *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir.2002). *See also, Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999). The Court found that the plaintiff was deprived of his property interest, holding that:

> Gunasekera's complaint alleges that he lost both pay (including "a summer salary research stipend that complements annual salary" for Graduate Faculty) and benefits . . . We think it obvious that this severe sanction substantially damaged plaintiff's property interest in her position." (emphasis added)). Viewing the allegations in the complaint the light most favorable to Gunasekera, we believe that his extensive documentation of the ways in which this suspension affects his career suffices to allege that his suspension is a deprivation of property.

Like Plaintiff here, the Sixth Circuit also found that the plaintiff was deprived of a protected liberty interest without due process of law.

In the instant case, both Plaintiff's property and liberty interests under the Fourteenth Amendment have been abridged by Defendants. Plaintiff has been

afforded no hearing, even as he is being reported to various administrative boards.

As the Sixth Circuit has held:

> Except in exceptional circumstances, not applicable here, before a
> person is deprived of either a liberty or property interest, he has a right
> to some kind of hearing. *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir.
> 2002) (internal citations omitted).

## IV.   Injunctive Relief is Warranted under the *Ex Parte Young* Exception to Sovereign Immunity Even If the TRO Was Not Granted

Here, Plaintiff has not had an evidentiary hearing. The harm to Plaintiff
remains ongoing. His reputation amongst his peers and his underlings alike are
currently being sullied as routine reports are being made to various administrative
agencies that he has been suspended, albeit for events that have nothing to do with
his ability to perform his duties. Moreover, not only have his earnings been reduced,
but they have been reduced by such a substantial amount that it seems abundantly
clear that the reduction was in an effort to oust him from his position, as Plaintiff
cannot hope to subsist on less than half of his accustomed income. For these reasons,
an injunctive relief is particularly appropriate.

Defendant contends that "Plaintiff has no underlying actionable claims" and
hence that the requested injunctive relief "should be dismissed for this reason . . ."[8]
On the contrary, Plaintiff has already set forth reasons for the viability of his claims,
now turns to making the case for the appropriateness of injunctive relief under the

---

[8] Defendant Board of Regents' Motion to Dismiss, p. 24.

circumstances. "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) *when the doctrine set forth in Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)*, applies*. *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (emphasis added).

Moreover, discerning whether a suit against a state official may be considered as a suit against the state is determined based on whether the plaintiff seeks retroactive damages or prospective damages. *Doe v. Wigginton*, 21 F.3d 733, 736 (6th Cir. 1994). *See also, Benison v. Ross*, No. 12-15226, 2015 WL 13688201, at *7 (E.D. Mich. Mar. 31, 2015). A suit seeking retroactive damages usually implicates monetary damages, which in turn features significant involvement by the state government which usually holds the purse strings. Such suits seeking retroactive damages are impermissible. *Id*. at 737. Conversely where the injunction being sought by the plaintiff would merely secure a state official's adherence to federal law in the future, then such relief is enough to trigger "the Young fiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997). *See also, Benison*, *supra* at *7. The ongoing ruination of Plaintiff's reputation is not financially quantifiable. That is why a preliminary injunction is critical to try and salvage Dr. Doe's reputation.

## V.   Plaintiff Maintains a Cognizable Retaliation Claim

As outlined in his Complaint, Plaintiff sent two letters to his superiors. One

letter was critical of the manner by which the health system was operated, along with an editorial which took a dim view of how the medical center was run, from both an administrative as well as clinical standpoint. **Dkt. No. 1**, Page ID 28. Plaintiff included the extent of the involvement of Mike Mulholland, the then Chairman of the Department of Surgery in rearranging staff and leadership. *Id*.

In its motion, Defendant posits in perfunctory fashion that Plaintiff "nowhere identifies any statutory or other legal protection created by these letters." Defendant's position does not quite reflect the state of the law.

Fed. R. Civ. P. 8 imposes a "notice-pleading standard" upon aspiring plaintiffs. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The rule requires that a pleading "contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976). There can be no question that Plaintiff's Complaint meets this standard. Having stated the applicable cause of action, and the facts upon which they were premised, there was no need for Plaintiff to equally cite to a specific statute that specifically protects Plaintiff's act of producing the letters at issue.

## VI.   Plaintiff Maintains a Cognizable Intentional Infliction of Emotional Distress Claim

Plaintiff maintains a cause of action for intentional infliction of emotional distress (IIED) against Defendant. The tort is premised upon the notion that "'[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe

emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'" *Early Detection Center, PC v. New York Life Ins. Co*., 157 Mich. App. 618, 625, 403 N.W.2d 830 (1986). IIED comprises four elements, to wit: "1) Extreme and outrageous conduct, 2) intent or recklessness, 3) causation and 4) severe emotional distress." *Graham v. Ford*, 237 Mich. App. 670, 674; 604 N.W.2d 713 (1999). A defendant is liable where his conduct is such that a spectator, upon hearing the facts, would be roused to resentment, and would involuntarily exclaim, 'outrageous!' *Roberts v. Auto-Owners Ins. Co*., 422 Mich. 594, 603; 374 N.W.2d 905 (1985).

*Warren v. June's Mobile Home Village & Sales*., Inc., 66 Mich. App. 386; 239 N.W. 380 (1976) established that extreme and outrageous character may "occur by virtue of an abuse by defendant of a relationship which puts him in a position of actual or apparent authority over plaintiff or gives the defendant power to affect the plaintiff's interests." Here, Michigan Medicine is Plaintiff's employer, which put it in a position of apparent authority over Plaintiff. Defendants – all of them – have acted in concert to deprive Plaintiff of his rights. Defendants' aggregate conduct in this instance extends well beyond 'outrageous' and 'extreme.' Reducing Plaintiff's earnings by 60% was a punitive act that would shock even the most resolute mind. Defendants have essentially set about undermining Plaintiff's reputation and good name.

Defendant contends that Plaintiff "merely claims that Defendants turned down his renewal of clinical privileges and that his salary has been reduced."[9] By doing so, Defendant greatly trivializes the trauma undergone by Plaintiff who has seen his lifetime's achievements marred by the Defendants' actions, and who has now had to live on less than half of the earnings that he was accustomed to for many years.

## VII.   Plaintiff's Tort Claims Are Invulnerable to Governmental Immunity

Defendant incorrectly argues citing M.C.L. § 691.1407(1) that it is entitled to governmental immunity on all of Plaintiff's tort claims.[10] Governmental actions which constitute intentional torts are only protected by government immunity where they are justifiably warranted. *Brewer v. Perrin*, 132 Mich. App. 520; 349 N.W.2d 198, 202 (1984). In *Ross v. Consumers Power*, 420 Mich. 567; 363 N.W.2d 641 (1984) the Michigan Supreme Court made a ruling regarding the granting of immunity to government officials in the context of intentional torts.

Under Ross: "[a] governmental employee must raise governmental immunity as an affirmative defense and establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than

---

[9] Defendant's Board of Regents' Motion to Dismiss, p. 23.

[10] Defendant Board of Regents' Motion to Dismiss, p. 18.

ministerial, in nature." Defendants are not entitled to immunity based on any of the three prongs because they did not act in good faith. In *Odom v. Wayne County*, 482 Mich. 459; 760 N.W.2d 218, 224-25 (2008), the court reaffirmed *Ross's* holding, finding that "official immunity should not become a cloak for malicious, corrupt and otherwise outrageous conduct on the part of those guilty of intentional abuse of power . . ."

## VIII. Plaintiff Maintains a Cognizable Breach of Fiduciary and Public Duties Claim

Plaintiff was in a position that merited trust with Michigan Medicine. An allegation for a breach of fiduciary duty is typically defined as follows: "Damages may be obtained for a breach of fiduciary duty when a position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *In re Duane v. Baldwin Tr*., 274 Mich. App. 387, 401, 733 N.W.2d 419, 427 (2007). That Plaintiff has been abused and betrayed under the circumstances of this case seems irrefutable. Plaintiff spent a lifetime building his bona fides; his credentials and recognition in medical circles. Defendants have sought to blemish Plaintiff's record.

## IX. The Immediate Harm Obviates any Alleged Failure to Exhaust Remedies

The harm being done to Plaintiff's reputation and standing continues to take place even at the time of the writing of this brief, as Defendants continue to report that he is suspended from practice, and he continues to lose more than half of his

pay for each pay period. Defendant contends that Plaintiff's case is ripe for dismissal because he has not exhausted his administrative remedies. In doing so, Defendant cites to the Medical Staff Bylaws and Rules and Regulations which were not attached to Plaintiff's Complaint.

"The federal rules require that if, in a 12(b)(6) motion to dismiss, matters outside the pleadings are presented to, and not excluded by the court, the motion must be treated as one for summary judgment under Fed. R. Civ. P. 56. *Wysocki v. International Business Machine Corp*., 607 F.3d 1102 (6th Cir. 2010*). See also, Salephour v. University of Tenn*., 159 F.3d 199 (6th Cir 1998), which declined to adjudicate a Motion to Dismiss until eleven months after it was filed in order that Plaintiff annex discovery.

Moreover, the immediacy of the harm beings suffered by Plaintiff mandated that he forego any other remedies. The remedy offered by the Bylaws was a FAIR Hearing, to which Plaintiff immediately acquiesced when offered, and which nevertheless has not been convened to this very day. Under Fed. R. Civ. P. 65(b), courts are to examine "whether specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant" when considering an application for a temporary restraining order. *Hartman v. Acton*, No. 2:20-CV-1952, 2020 WL 1932896, at *1 (S.D. Ohio Apr. 21, 2020) citing Fed. R. Civ. P. 65(b)(1)(A).

Irreparable harm has been found time and again – even outside the context of an injunction – by federal courts to be a defense to a claim that a plaintiff failed to exhaust his remedies.

## X.     Plaintiff Has Sought Permission of this Court to Proceed Pseudonymously

Plaintiff has sought a Protective Order from the Court for permission to proceed pseudonymously, or in the alternative, to Amend his Complaint. (See **Dkt. No. 29**, *Plaintiff's Motion for Protective Order to Proceed Pseudonymously,* Page ID 741.) Courts have found that a complaint should not be dismissed for lack of jurisdiction because there is no jurisdictional bar to the action unless, and until, the court denies the plaintiff leave to proceed under a pseudonym. See *Doe v. Mitchell*, No. 2:20-CV-00459, 2020 WL 6882601, at *7 (S.D. Ohio Nov. 24, 2020).

Hence, should the Court not enter an order permitting Plaintiff to proceed pseudonymously, then the solution is for leave to be granted for the Complaint to be amended. Defendant certainly has not been prejudiced in any way, and cannot be prejudiced by an amendment of the Complaint.

## CONCLUSION

For the reasons articulated in this brief, Plaintiff prays that this Honorable Court deny the Defendant's Motion to Dismiss and permit this case to proceed to the discovery phase.

Respectfully Submitted,

25

/s/ *Ronald G. Acho*
Cummings, McClorey, Davis & Acho, P.L.C.
17436 College Parkway
Livonia, MI 48152
(734) 261-2400
Attorneys for Defendant
racho@cmda-law.com
Dated: January 25, 2022       (P 23913)


Saif R. Kasmikha (P74320)
Midwest Legal Partners, PLLC
Attorney for Plaintiff
42705 Grand River Avenue, Suite 201,
Novi, MI 48375
Dated: January 25, 2022       Office: (248) 344-4570
E-mail: skasmikha@midwestlegalpartners.com


## LOCAL RULE CERTIFICATION

I, Ronald G. Acho, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

/s/ *Ronald G. Acho*
Cummings, McClorey, Davis & Acho, P.L.C.
17436 College Parkway
Livonia, MI 48152
(734) 261-2400

26

Attorneys for Defendant<br>
racho@cmda-law.com

Dated: January 25, 2022       (P 23913)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 25, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification to all parties of record. I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: None.

/s/ <i>Ronald G. Acho</i>_____<br>
Cummings, McClorey, Davis & Acho, P.L.C.<br>
17436 College Parkway<br>
Livonia, MI 48152<br>
(734) 261-2400<br>
Attorneys for Defendant<br>
racho@cmda-law.com

Dated: January 25, 2022       (P 23913)