UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE, M.D.,

Plaintiff,

v.

THE BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN, ET AL.,

Defendants.

_____/

Case No. 21-cv-13032

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [#14, #15], DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT [#38], AND DISMISSING AS MOOT THE REMAINING MOTIONS [#3, #8, #16, #29, #33, #36, AND #50]

### I. INTRODUCTION

Plaintiff John Doe, M.D., filed suit against The University of Michigan Board of Regents, and Doctors Marie Lozon M.D., and Justin Dimick M.D., (collectively, the "Defendants") on December 29, 2021. *See* ECF No. 1. Plaintiff is a doctor seeking monetary relief as redress for harm Defendants allegedly caused him by suspending his hospital clinical privileges and reducing his salary. ECF No. 3, PageID.50. Plaintiff also seeks equitable relief enjoining Defendants from reporting his suspension to the National Practitioner Data Bank ("NPDB") or the State of Michigan Board of Medicine, and the immediate reinstatement of his

clinical privileges.  *Id.* at PageID.50–53.  While seeking redress, Plaintiff wishes to proceed anonymously.

Presently before the Court are Defendants' Motions to Dismiss [#14, #15] filed on January 4, 2022.  Plaintiff also filed a Motion for Leave to Amend the Complaint [#38] on January 28, 2022.  The motions are fully briefed and ready for a determination.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the matter's disposition.  Therefore, the Court elects to resolve the motions on the briefs.  E.D. Mich. L.R. 7.1(f)(2).  For the reasons that follow, the Court will GRANT Defendants' Motions to Dismiss, DENY Plaintiff's Motion for Leave to Amend the Complaint, and DISMISS the parties' remaining motions as moot.

## II. FACTUAL BACKGROUND

Plaintiff is a tenured professor of surgery at the University of Michigan School of Medicine, where he also serves as an accomplished physician with the University of Michigan Health System (the "University").  ECF No. 1, PageID.4. He professes to have "numerous awards for his excellence in teaching, research, and clinical care."  ECF No. 38-1, PageID.940.  As a physician, the Complaint

claims Plaintiff's patients "raised no concerns" about his performance.  ECF No. 1, PageID.5.

While employed at the University, Plaintiff began speaking out against "concerning administrative practices" that "related to transparency and accountability" in the University.  ECF No. 1, PageID.10.  After Plaintiff voiced these concerns, the Complaint reads, the University initiated disciplinary proceedings against Plaintiff for "three recent non-event matters."  *Id.*  The disciplinary proceedings extended from concerns Plaintiff's peers had about his professional conduct.  ECF No. 38-1, PageID.947.

The three incidents varied in subject-matter.  For instance, one non-event matter concerned Plaintiff's "supervision over a well-trained fellow" while the trainee operated on a patient.  ECF No. 38-1, PageID.948.  The University felt that the fellow needed "a stronger presence" from Plaintiff during the operation.  *Id.*  Another non-event matter "involved a surgical procedure where there was increased bleeding" in a patient.  *Id.*  A third incident concerned Plaintiff "sharing a [Christian Slater] video that had offensive language to colleagues."  *See id*; *see also* ECF No. 35, PageID.880.  These three episodes formed the University's "basis for suspending [Plaintiff's] clinical privileges indefinitely," and the

University reporting Plaintiff "to the National Practitioner Data Bank (NPDB)."[1]
*Id.* Plaintiff alleges Defendant Lozon informed him that the University would
report the suspension to the NPDB.[2] *Id.* at PageID.949. According to the
Complaint, these "matters were reviewed and investigated and shown as non-
issues." ECF No. 1, PageID.11.

Consequences followed the initial disciplinary proceedings. The University
required Plaintiff to complete an out-of-state behavioral help program because of
these non-event matters. *Id.* Plaintiff's clinical privileges were also suspended
after the University reopened the disciplinary proceedings, over a year ago. *Id.* On
March 27, 2021, the University provided Plaintiff thirty days to request a "fair
hearing … in the form of a conference" with University staff, including Defendant
Dimick. ECF No. 14-2, PageID.370. The University's Medical Staff Bylaws
afford individuals a fair hearing whenever "privileges are subject to suspension,
restriction, or termination[.]" *Id.* Plaintiff accepted the fair hearing opportunity on
March 30, 2021. ECF No. 38-1, PageID.960. As of this writing, the fair hearing
has not concluded. *Id.* at PageID.951.

---

[1] Healthcare providers are statutorily required to report "a professional review
action that adversely affects the clinical privileges of a physician for a period
longer than 30 days" to the NPDB. 42 U.S.C. § 11133(a)(1).
[2] Lozon also conveyed details about the suspension to Plaintiff, the proposed
Amended Complaint states, including that the suspension was "precautionary"
with a duration limited to fourteen days. ECF No. 38-1, PageID.958. On March
16, 2021, Lozon allegedly informed Plaintiff that the University voted to extend
his hospital privileges suspension "indefinite[ly]." *Id.* at PageID.959.

Plaintiff alleges that the University's actions will cause "irreparable harm" to Plaintiff by damaging his reputation. *Id.* at PageID.950. He also argues deprivations "of due process rights" for how the University handled the reopened disciplinary proceedings thus far. *Id.* The Complaint suggests Defendants' actions damaged relationships with referring physicians. *Id.* at PageID.952. Plaintiff can also lose his American Board of Plastic Surgery Certification, he claims, as a result of not having clinical privileges. *Id.* at PageID.955. Nonetheless, Plaintiff still retains his license to practice medicine. ECF No. 38-1, PageID.965. Indeed, Plaintiff continues to hold clinical privileges at two other hospitals in Ann Arbor, Michigan. ECF No. 35, PageID.878.

Plaintiff filed suit in federal court on December 29, 2021, in response to Defendants suspending his clinical privileges and reducing his salary. ECF No. 1, PageID.21. Plaintiff initially sought a temporary restraining order enjoining Defendants from sending NPDB or the State of Michigan Board of Medicine a report about Plaintiff's disciplinary proceedings. ECF No. 3, PageID.50. Defendants submitted Motions to Dismiss in response on January 4, 2022. *See* ECF Nos. 14, 15. Non-party Charles Blackwell also moved to intervene on January 3, 2022, seeking to unseal Plaintiff's filings. ECF No. 8, PageID.202. The Court denied Plaintiff's temporary restraining order request on January 14, 2022, finding Plaintiff unlikely to prevail on his federal claim or face irreparable harm.

### III. LAW AND ANALYSIS

**A. Motions to Dismiss**

The Court first considers Defendants' Motions to Dismiss Plaintiff's case. Plaintiff brings a single federal claim, and several state law claims against all Defendants. The federal claim alleges violations of Plaintiff's federal procedural due process rights under 42 U.S.C. § 1983. ECF No. 1, PageID.21. Plaintiff also brings breach of contract and intentional tort claims under Michigan law. *Id.* at PageID.22–27. He seeks injunctive relief under *Ex Parte Young* as well. *See* 209 U.S. 123 (1908). Defendants seek dismissal of Plaintiff's Complaint in its entirety.

### 1. Defendants are Immune from Plaintiff's § 1983 Claim

Defendants argue that, as a threshold matter, they are immune from Plaintiff's suit. Defendant Board of Regents avers that this court lacks jurisdiction because it "is cloaked with sovereign immunity" under the Eleventh Amendment that "has not been waived." *See McPike-McDyess v. Regents of the Univ. of Mich.*, No. 14-14658, 2015 U.S. Dist. LEXIS 17159, at *3 (E.D. Mich. Feb. 12, 2015) ("The court … has no jurisdiction over Plaintiff's Complaint because the Eleventh Amendment constitutes a bar to her action[.]") (citing *Estate of Ritter by Ritter v. Univ. of Mich.*, 851 F.2d 846, 851 (6th Cir. 1988)). The Eleventh Amendment "bar[s] a citizen from suing his own State under the federal-question head of jurisdiction." *Alden v. Maine*, 527 U.S. 706, 727–28 (1999). "It bars all suits,

whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (overruled on other grounds, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996)).   It is clear "the Board of Regents unquestionably is a state agency to which the [Eleventh] Amendment applies[.]" *See Estate of Ritter by Ritter*, 851 F.2d at 848; *see also Davis v. Michigan Med. Univ. Hosp.*, No. 18-CV-14055, 2019 U.S. Dist. LEXIS 66025, at *2–*3 (E.D. Mich. Apr. 18, 2019) (dismissing action because "[t]he university is … a state entity that enjoys Eleventh Amendment immunity.").

Parties can overcome Eleventh Amendment immunity in two circumstances: (1) where Congress abrogates the state's immunity, *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 66, 670 (1999), and (2) when a State consents to suit.  *Sossamon v. Texas*, 563 U.S. 277, 284 (2011).   The Eleventh Amendment also allows suits against state officials in their official capacity for prospective injunctive or declaratory relief.  *See Ex Parte Young*, 209 U.S. 123 (1908).  "In order to fall within the *Ex* [*P*]*arte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law."  *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).

The Court finds Eleventh Amendment immunity bars Plaintiff's claims for damages against Defendant Board of Regents.   In response to Defendants'

affirmative defense, Plaintiff suggests the Board of Regents is a "local government" body that the Eleventh Amendment does not protect.   ECF No. 34, PageID.842–843.   The parties agree that local government entities, like counties, do not enjoy Eleventh Amendment immunity.   ECF No. 40, PageID.1000.   But the Board of Regents is a state entity.   *See Estate of Ritter by Ritter*, 851 F.2d at 852 (finding the district court lacks jurisdiction over the University of Michigan Board of Regents "because the eleventh amendment constitutes a bar.").   The Board of Regents has not waived immunity here, nor has Congress abrogated it in this instance.   Whether Plaintiff can obtain injunctive relief depends on his Complaint and Amended Complaint pleading a claim for relief under the Fourteenth Amendment.   However, the Court must dismiss Plaintiff's claims for damages against the Board of Regents because jurisdiction is lacking.[3]

Defendant Doctors also assert immunity from Plaintiff's action: namely under the qualified immunity doctrine.   ECF No. 39, PageID.992.   "The doctrine of qualified immunity protects government officials 'from liability for civil damages

---

[3] Defendants also argue Plaintiff's federal claim against the Board of Regents fails because it is not a "person" subject to suit under Section 1983.   "When an action is brought against a public institution, as it is here, the question is whether the institution can be characterized as an arm or alter ego of the state."   *See McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 456 (6th Cir. 2014) (citing *Hall v. Med. Coll. Of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984)).   Michigan law is clear on the Board of Regents being an arm of the State.   *See Estate of Ritter by Ritter*, 851 F.2d at 848.   Plaintiff's federal claim against Defendant Board of Regents fails for this reason as well.

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Public officials are immune from suit unless they: (1) commit a constitutional violation; and (2) the constitutional right violated was "'clearly established'" when the incident occurred.  *See Martin v. Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quoting *Pearson*, 555 U.S. at 232).  Plaintiffs must satisfy both prongs "for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights.  If either prong is not satisfied, qualified immunity will shield the officer from civil damages." *Id.* (citing *Pearson*, 555 U.S. at 236).

Plaintiff here sues Defendant Doctors in their individual capacities for "act[ing] in concert to initiate and extend his suspension and dock is pay[.]"  ECF No. 35, PageID.881.  His Response in Opposition does not respond to Defendant Doctors' qualified immunity defense.   Arguments a party ignores in its response are deemed waived by the Court.  *See Scott v. State of Tenn.*, 878 F.2d 382, at *2 (6th Cir. 1989); *see also Ritchie v. Coldwater Cmty. Schools*, 947 F. Supp. 2d 791, 825 (W.D. Mich. 2013) ("[F]ailure to address Defendants' governmental immunity argument in his response constitutes a waiver of any argument he may have.").

The Court therefore finds Defendant Doctors entitled to qualified immunity from Plaintiff's claims.

### 2.  Plaintiff's § 1983 Claims Against Defendants

Even if Defendants lacked immunity from Plaintiff's suit, Defendants argue Plaintiff fails to state a federal claim.  Plaintiff's sole federal claim comes under 42 U.S.C. § 1983, alleging a procedural due process violation under the Fourteenth Amendment.  The Fourteenth Amendment's Due Process Clause forbids States from "depriv[ing] any person of life, liberty, or property[] without due process of law."  U.S. Const. amend. XIV, § 1.  When faced with a procedural due process claim, courts engage in a two-step inquiry.  First, courts determine whether a constitutionally protected interest is at stake.  *Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017).  Second, courts consider what procedures are necessary to protect that interest.  *Id.*  When no protected interest exists, no process is due. *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 580 (6th Cir. 2021).

Neither the Constitution nor courts create or define protected interests.  *Bd. of Regents v. Roth*, 408 U.S. 562, 577 (1972).  Instead, courts identify property interests in independent sources such as contracts between parties, or state law.  *Id.* at 577–78.  For example, a government benefit or job is a property interest if there are "rules or mutually explicit understandings that support [a party's] claim of

entitlement to" the interest. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). "The hallmark of property is an individual entitlement grounded in state law, which cannot be removed except for cause." *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)). "Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (internal quotation marks and emphasis omitted) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)). The Supreme Court has therefore held that tenured professors at public institutions have a protected property interest in their continued appointment. *Kaplan*, 10 F.4th at 578 (citing *Roth*, 408 U.S. at 576–77).

Plaintiff here—also a tenured professor—claims both a property interest and liberty interest. The Court discusses each claimed interest below.

### a. Property Interests

The Complaint argues Defendants deprived Plaintiff of two property interests: (1) his clinical privileges, and (2) Plaintiff's full salary. ECF No. 1, PageID.21. Defendants aver Plaintiff has not plead the deprivation of any constitutionally protected property interest.

The Court begins by considering Plaintiff's clinical privileges. "Property interests protected by the due process clause must be more than abstract desires or attractions to a benefit. The Due Process Clause only protects those interests to which one has a legitimate claim of entitlement." *Brotherton v. Cleveland*, 923 F.2d 477, 480 (6th Cir. 1991) (internal citations and quotation marks omitted). A "unilateral expectation" or "abstract need" to retain clinical privileges undisturbed is not enough. *See Roth*, 408 U.S. at 577.

Relying on *Gunasekera v. Irwin*, 551 F.3d 461, 467–68 (6th Cir. 2009), Plaintiff argues a combination of "the Medical Staff Bylaws" and "[t]he customs and traditions at Michigan Medicine" created his property interest in clinical privileges at the University. ECF No. 34, PageID.849. In *Gunasekera*, a tenured professor and department chair argued that the university violated the Due Process Clause by suspending his Graduate Faculty status without "notice and a meaningful opportunity to be heard." 551 F.3d at 464. The *Gunasekera* plaintiff plead "a right intrinsic" to his tenured professorship so long as he met four criteria that the university defined. *Id.* at 467. The court agreed with the plaintiff, recognizing "that an employer's custom and practice can form the basis for a protected property interest." *Id.* The Sixth Circuit also noted "that there [wa]s no precedent" at the university for suspending or revoking a tenured professor's Graduate Faculty status. *Id.* at 468.

In the light most favorable to Plaintiff, his case is clearly distinguishable from *Gunasekera*. To begin, *Gunasekera* discussed specific criteria the university had supporting the "custom and practice" argument of tenured professors having a right to Graduate Faculty status. 551 F.3d at 467. If a tenured faculty member met the four criteria, they had an implied right to their administrative role. *Id.* Plaintiff here neither discusses nor pleads any criteria supporting his "custom and practice" argument. The university in *Gunasekera* also publicized a report about the investigation, which has not occurred here. 551 F.3d at 464. Without more supporting facts, the Court cannot find *Gunasekera* analogous to Plaintiff's case.

Plaintiff does not allege a lack of precedent for the University suspending an employee's clinical privileges either. *Id.* at 468. A public institution taking an unprecedented action against an employee can support a party's "custom and practice" argument in support of a protected property interest. *Id.* But here, Plaintiff argues "[n]o other tenured professor has been summarily suspended for trivial events not connected to his performance or impeding Michigan Medicine's mission[.]" ECF No. 34, PageID.849. By his own admission, Plaintiff does not allege the University *never* suspended a physician's clinical privileges, unlike the university in *Gunasekera* taking an unprecedented action. And Plaintiff's proposed Amended Complaint suggests the University suspended his clinical privileges at least in part because of performance related situations, *i.e.*, not

providing sufficient supervision over residents operating on patients.  ECF No. 38-1, PageID.948.  While it is true the *Gunasekera* plaintiff suffered a salary reduction and status suspension, the facts discussed above also supported the plaintiff's property interest claim.   551 F.3d at 468.   The Court finds *Gunasekera* insufficiently analogous to Plaintiff's claimed property interest in clinical privileges.

Plaintiff also argues the Medical Staff Bylaws support his clinical privileges claim.  ECF No. 34, PageID.849.[4]  Defendants disagree, contending Michigan law does not guarantee clinical staff privileges as a property interest.  *See* ECF No. 14, PageID.291–293.  The Court agrees Michigan law does not protect clinical staff privileges as a property interest.  Michigan law does not recognize "Medical Staff Bylaws" to "create a contractual relationship in Michigan" with Due Process Clause protections.  *Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 448 (6th Cir. 2014).  *Bhan* explained:

> There [] is no indication that either [party] provided the requisite consideration for the Medical Staff Bylaws to create an enforceable contract.  The hospitals are required by state law to adopt bylaws,

---

[4] Defendants also suggest procedural due process claims cannot lie exclusively in contract because "the availability of a state breach-of-contract remedy defeats the due process claim."  ECF No. 14, PageID.296 (citing *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017)).  The Sixth Circuit has reversed course since *Kaminski*, acknowledging that "a contract between the parties" can provide an "independent source[] of entitlement" to a property interest.  *Kaplan*, 10 F.4th at 577.  The Court therefore declines to dismiss Plaintiff's Due Process Clause claim because he argues the property interest rests in contract.

rules and policies for eligibility and qualifications of medical staff. The hospitals' fulfillment of their statutory obligation to adopt and conform their actions to the bylaws, rules, and regulations does not constitute the kind of separate consideration necessary for a contractual relationship.

*Id.* (citations omitted).   The Medical Staff Bylaws are the only contractual authority Plaintiff cites in support of his property interest claim.   ECF No. 38-1, PageID.969.   Because the Bylaws are not a contract, Plaintiff cannot rely on them to support his property interest claim.   Instead, those Bylaws afford the University discretion managing its staff, including by suspending clinical privileges.   ECF No. 14-2, PageID.350–351.   The Sixth Circuit has held "that a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary."   *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).   Courts in the Eastern District of Michigan have interpreted hospital bylaws similarly.   *Brintley v. St. Mary Mercy Hosp.*, 904 F. Supp. 2d 699, 722 (E.D. Mich. 2012) ("Medical Staff Bylaws do not constitute a binding contract."), *aff'd*, *Brintley v. St. Mary Mercy Hosp.*, 545 F. App'x 484, 488 (6th Cir. 2013).   As such, the Court declines finding the Medical Staff Bylaws are contractual authority supporting Plaintiff's property interest claim.

Plaintiff also claims a constitutionally protected property interest in his full salary.   ECF No. 1, PageID.21.   "To have a protected property interest of this kind, [Plaintiff] must have a legitimate claim of entitlement to [his] full salaries arising

out of Michigan law." *See Ash v. Bd. of Educ. of Woodhaven Sch. Dist.*, 699 F.2d 822, 825 (6th Cir. 1983); *see, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (recognizing a property interest in welfare benefits that were assured as "a matter of statutory entitlement"). A legitimate claim of entitlement is based in "the requisite mutual understanding" that full pay is protected under a statute or contract. *Leis v. Flynt*, 439 U.S. 438, 441–43 (1979). Plaintiff cites neither preexisting law nor a contract prohibiting Defendants from reducing his pay. Because Plaintiff fails to plead a mutual understanding in receiving his full pay, he has not plead a property interest in his full salary to survive a Rule 12(b)(6) Motion to Dismiss. "In sum, [Plaintiff] has pointed to no state statute, formal contract, or contract implied from the circumstances that supports his claim to a protected property interest[.]" *Crosby*, 863 F.3d at 554. Accordingly, the Court declines to find that Plaintiff possesses a cognizable property interest that the Due Process Clause protects.

### b. Liberty Interest

Plaintiff also claims a liberty interest in his "good name, reputation, honor, integrity, and character[.]" ECF No. 1, PageID.21. The Due Process Clause protects an individual's liberty interest in their "reputation, good name, honor, and integrity" in limited circumstances. *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir.

2002) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)). "Some alteration of a right or status 'previously recognized by state law,' such as employment, must accompany the damage to reputation" to establish a *prima facie* due process liberty interest claim. *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)). Plaintiff must plead five factors to state a claim for deprivation of a liberty interest:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty, or malfeasance. Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Id.* at 320 (quoting *Brown v. City of Niota*, 214 F.3d 718, 722–23 (6th Cir. 2000)) (alterations adopted). If all five elements are satisfied, the plaintiff "is entitled to a name-clearing hearing if" they request one. *Id.* The deprivation of a party's liberty interest occurs when the public employer denies a name-clearing hearing request without process. *Id.* ("In order to succeed on his liberty interest claim, plaintiff must also prove that defendant improperly refused to grant him a post-removal opportunity to refute the false charges that led to his removal[.]") (quoting *Baden v. Koch*, 799 F.2d 825, 830 (2d Cir. 1986) (alterations adopted)).

Applied here, Plaintiff does not plead a claim for deprivation of a liberty interest. First, the University never terminated Plaintiff, which is the first element

necessary to state a Due Process Clause claim concerning a liberty interest.  *See Schirrick v. AU Sable Valley Cmty. Auth.*, No. 04-10367, 2006 U.S. Dist. LEXIS 9069, at *11 (E.D. Mich. Feb. 16, 2006) (dismissing a plaintiff's claim for deprivation of a liberty interest because "the defendant did not actually terminate her[.]"); *Murtha v. Rossford Exempted Vill. Sch.*, No. 21-3449, 2021 U.S. App. LEXIS 32181, at *13–*14 (6th Cir. 2021) ("Murtha suffered no change in legal status … Any harm to his reputation that may give rise to a claim of defamation is unaccompanied by the requisite change in legal status that would bring it under the protections of the Fourteenth Amendment.").  Second, there are no public "stigmatizing statements" Plaintiff references in either his original or proposed Amended Complaint.  *Quinn*, 293 F.3d at 320.  Instead, Plaintiff claims "an upcoming scathing and defamatory report to the State of Michigan Board of Medicine and [National Practitioner's Data Bank]" will irreparably harm his reputation.  ECF No. 1, PageID.23.  But no such report currently exists.  ECF No. 38-1, PageID.955.  And if no report exists, it is not publicly disseminated.  For this reason as well, Plaintiff's liberty interest claim fails.

Third, Plaintiff does not argue Defendants deprived him of a hearing.  Quite the opposite; Plaintiff pleads a hearing will occur.  ECF No. 1, PageID.12 ("Dr. Doe was given 30 days to formally request a Fair Hearing[.]").  The Court will dismiss Plaintiff's Fourteenth Amendment liberty interest claim because

Defendants never denied Plaintiff a hearing, and for the reasons already discussed. *See Bowles v. Macomb Cmty. Coll.*, No. 20-13175, 2022 U.S. Dist. LEXIS 72480, at *10 (E.D. Mich. Apr. 20, 2022) (dismissing a plaintiff's liberty interest claim "[b]ecause Plaintiff was not denied a name-clearing hearing[.]").

### 3.  Injunctive Relief

Plaintiff seeks an injunction prohibiting the University from reporting to the NPDB and State of Michigan Board of Medicine, and a reinstatement of his clinical privileges.  "Injunctive relief is not a cause of action, it is a remedy." *Thompson v. JPMorgan Chase Bank, N.A.*, F. App'x 440, 442 n.1 (6th Cir. 2014) (internal quotation marks omitted).  It follows that an injunction under *Ex Parte Young* must accompany a federal cause of action.  *Cf. Kaplan*, 10 F.4th at 587 ("Because [Plaintiff] has failed to state a claim for any constitutional deprivation under § 1983, he is not entitled to injunctive relief on such a claim.").  Without any interests afforded constitutional protection, Plaintiff cannot state a Fourteenth Amendment procedural Due Process Clause claim.  The Court also lacks jurisdiction over Plaintiff's state law claims without a federal cause of action.  *See infra* Section.III.A.4.  As such, the Court will dismiss Plaintiff's *Ex Parte Young* claim.

### 4.  State Law Claims

Plaintiff also brings several claims under Michigan law: Breach of Contract (Count II), Breach of Fiduciary and Public Duties (Count III), Intentional Infliction of Emotional Distress (Count IV), and Retaliation (Count V).   ECF No. 1, PageID.24–29.   The only basis for this Court's jurisdiction over these claims is supplemental jurisdiction under 28 U.S.C. § 1367(c). "[S]upplemental jurisdiction is discretionary, not mandatory."  *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011).  No federal question remains before the Court, so it declines to exercise jurisdiction over Plaintiff's remaining claims.   Accordingly, Plaintiff's Michigan law claims are dismissed without prejudice.[5]

---

[5] Even if the Court retained jurisdiction, Plaintiff still does not plead state law claims entitling him to relief.  For example, Plaintiff's breach of contract claim is unsustainable because the Medical Staff Bylaws he relied on for that claim are not a contract. *See Brintley*, 904 F. Supp. 2d at 722.  Nor does Plaintiff identify "the existence of a fiduciary duty," by any Defendants, which is a necessary element for Count III of the Complaint. *Delphi Automotive PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016) (quotation omitted).  Finally, Plaintiff fails to state a claim for emotional distress and retaliation.  "The tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Haverbush v. Powelson*, 217 Mich. App. 228, 551 N.W.2d 206, 209 (1996).  Outrageous conduct "go[es] beyond all possible bounds of decency [] to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*  Even in the light most favorable to Plaintiff, he identifies no such conduct.  He was never "threatened … with physical harm" or the recipient of threatening letters. *Id.* The Court will decline to entertain Plaintiff's state law claims.

### B. Motion for Leave to Amend Complaint

Finally, Plaintiff also seeks to amend his Complaint. Courts will grant a party's motion to amend pleadings when the amended filing is likely to survive a Rule 12(b)(6) motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("The test for futility … does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss.").

Plaintiff's proposed amendments would not save his Complaint from dismissal. The proposed Amended Complaint does not plead facts that allow Plaintiff to overcome Defendants' immunity defenses. Nor does the proposed Amended Complaint plead a constitutionally protected liberty or property interest under the Fourteenth Amendment's Due Process Clause. Instead, Plaintiff seeks to supplement his original Complaint with additional details concerning the "non-event matters" and allegations against Defendants Lozon and Dimick. The additional facts, however, do not change this Court's analysis above. Because the proposed Amended Complaint does not cure the original Complaint's deficiencies, the Court will DENY Plaintiff's Motion for Leave to Amend the Complaint [#38].

## IV. CONCLUSION

For the reasons discussed herein, the Court will GRANT Defendants'
Motions to Dismiss [#14, #15].

The Court will DENY Plaintiff's Motion Amend the Complaint [#38].

The Court will DISMISS as moot the parties' remaining motions [#3, #8,
#16, #29, #33, #36, and #50].


**IT IS SO ORDERED.**


Dated:  June 16, 2022          /s/ Gershwin A. Drain
                               GERSHWIN A. DRAIN
                               UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 16, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager